This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Mark J. Carr ("Father") appeals from the decision of the Medina County Court of Common Pleas, Domestic Relations Division, modifying a shared parenting plan and a child support award. We affirm.
 I.
Father and appellee Kathy Pachuta, f.k.a. Carr ("Mother"), were divorced in June 1991. They had one child as issue of the marriage, Marc. As part of the divorce decree, Father and Mother adopted a shared parenting plan. They agreed that Father would be the primary residential parent and Mother would have Marc on weekends, alternating holidays, and for a two-week vacation. No child support was ordered.
In November 1992, Father and Mother modified the shared parenting plan, granting visitation of Marc to a grandmother and making other minor changes to the custodial arrangements, but Father was retained as the primary residential parent. The trial court approved the modifications. No child support was provided for in the modifying journal entry.
Either shortly before or shortly after the November 1992 modifications were journalized, the parties entered into an informal modification of the shared parenting plan. Marc would live with Mother, and Father would have Marc on weekends and at other times. Mother did not work full-time and would stay home with Marc. Father was to pay one-half of Marc's tuition to a private school and one-half of other expenses. However, these changes were not incorporated into a journal entry filed with the trial court. Mother remarried in January 1993; Father remarried in September 1996.
On December 3, 1996, Mother moved to modify parental rights and responsibilities. Mother sought to formalize the arrangement that had existed since late 1992 and to be declared the primary residential parent.
On May 20, 1997, Father moved the trial court to adopt a proposed shared parenting plan. Father's plan essentially retained the parties' original shared parenting plan, as adopted in 1991, with Father as the primary residential parent and Mother having Marc on weekends, one other day a week, alternating holidays, and for four weeks of summer vacation. Father's proposed shared parenting plan did not contain any provision for child support.
On June 17, 1997, Mother moved to adopt a different proposed shared parenting plan. Under this plan, Mother was to be the primary residential parent, with Father having Marc on weekends, one other night a week, six weeks of summer vacation, and alternating holidays. Mother's proposed shared parenting plan requested an unspecified amount of child support.
After a hearing before a magistrate, the magistrate's decision was issued on August 20, 1997. The magistrate recommended adoption of a shared parenting plan that differed from the proposed plans of both Father and Mother. The schedule of Marc's time living with each parent was similar to that of Mother's proposed plan, but with only four weeks of summer vacation being granted to Father. The magistrate also recommended that Father should pay child support to Mother in the amount of $490.21 per month, retroactive to December 3, 1996—the date when Mother filed her motion to modify parental rights and responsibilities. A child support worksheet was attached to the magistrate's decision, but the only evidence with regard to the parties' income was through testimony of the parties.
Father objected to the magistrate's decision, and Mother responded to Father's objections. On June 2, 1998, the trial court overruled Father's objections, adopted the magistrate's decision, and entered judgment for Mother. This appeal followed.
 II.
Father asserts six assignments of error. We will address each in turn.
 A. First Assignment of Error
THE TRIAL COURT ERRED WHEN IT FAILED TO ENFORCE THE MEDIATION PROVISION OF THE SHARED PARENTING PLAN.
In his first assignment of error, Father argues that the trial court did not have jurisdiction over Mother's motion to modify parental rights and responsibilities because the shared parenting plan required the parties to mediate disputes before resorting to the courts. A clause in the original shared parenting plan stated:
 The parties may agree that any controversy arising out of this Shared Parenting Plan shall be submitted first to the process of mediation through the services of a mediator on whom the parties agree. Further, the parties agree to pursue said mediation in good faith before seeking relief from the Court.
 Father contends that this clause required Mother to engage in mediation prior to filing her motion to modify parental rights and responsibilities and that, as a result, the trial court was without jurisdiction to entertain Mother's motion. We disagree.
In support of his argument, Father appears to contend that mediation is equivalent to arbitration, subjecting the shared parenting plan to R.C. Chapter 2711 and the general policy of encouraging the resolution of disputes through arbitration. However, the Ohio Supreme Court has unequivocally stated that arbitration and mediation are distinct remedies. Ohio Council 8,AFSCME v. Ohio Dept. of Mental Health (1984), 9 Ohio St.3d 139,142-43. "[I]t is clear that the terms `mediation' and `arbitration' are not functionally equivalent, but represent different methods with which to attempt to resolve grievances."Id. at 143. As such, the law of arbitration does not apply to mediation.
Father's argument that the mediation clause divested the trial court of jurisdiction is not persuasive for two reasons. First, the plain language of the clause states that the parties "may" resort to mediation. This sort of discretionary language does not impose a duty to mediate on the parties. Second, the record is devoid of any evidence that Father raised the issue of mediation prior to the hearing before the magistrate. Instead, Father proceeded without regard to the mediation clause, including submitting a proposed shared parenting plan that would modify the then-existing plan. Having proceeded in this manner, we conclude that Father waived any objection to the proceeding based on the mediation clause of the original shared parenting plan.
The mediation clause of the original shared parenting plan did not deprive the trial court of jurisdiction to hear Mother's motion to modify parental rights and responsibilities. Accordingly, the first assignment of error is overruled.
 B. Second Assignment of Error THE TRIAL COURT ERRED WHEN IT ORDERED ITS OWN SHARED PARENTING PLAN IN VIOLATION OF R.C. § 3109.04 [sic].
 Father argues in his second assignment of error that the trial court erred when it adopted the magistrate's recommended shared parenting plan. Both Father and Mother had submitted proposed shared parenting plans, but the shared parenting plan adopted by the magistrate was different from either of the proposed plans submitted. Father contends that the trial court exceeded its authority by doing so. We disagree.
When a shared parenting plan is first adopted under R.C.3109.04(D)(1)(a)(ii), the trial court must approve a plan submitted by one of the parties, or the court may return the plans with suggestions for modifications. The court cannot create its own shared parenting plan. McClain v. McClain (1993), 87 Ohio App.3d 856,857. However, in the case at bar, a shared parenting plan had previously been adopted. Thus, when the trial court adopted the magistrate's decision, the trial court did not adopt a shared parenting plan but instead modified an existing shared parenting plan.
Husband argues that all modifications to a shared parenting plan must be pursuant to R.C. 3109.04(E)(1)(a). However, three additional methods of modifying a decree allocating parental rights and responsibilities are found in R.C.3109.04(E)(2).[1] R.C. 3109.04(E)(2)(b) states in relevant part:
 The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree.
Thus, the trial court was empowered to modify the shared parenting decree in a form different from the proposed modifications submitted by Father and Mother.
Father's second assignment of error is overruled.
 C. Third Assignment of Error THE TRIAL COURT ERRED WHEN IT MADE ISSUED [sic] A CHILD SUPPORT ORDER WITHOUT COMPLYING WITH R.C. § 3113.215 [sic].
 In his third assignment of error, Father argues that the trial court erred by not requiring the parties to submit income verification information before determining child support, as required by R.C. 3113.215(B)(5)(a). However, Father did not raise this issue in his objections to the magistrate's decision. Civ.R. 53(E) (3) (b) states in relevant part: "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Because this issue was not raised in the objections to the magistrate's decision, Father cannot raise the issue for the first time here. The third assignment of error is overruled.
 D. Fourth Assignment of Error THE TRIAL COURT ERRED WHEN IT ONLY IMPUTED PART-TIME INCOME TO THE PLAINTIFF-APPELLEE MOTHER WHERE THE EVIDENCE SHOWED THAT SHE WAS CAPABLE OF FULL-TIME WORK AND HAD NO RESTRICTIONS ON HER EARNING ABILITY.
 Father argues in his fourth assignment of error that the trial court erred by not imputing enough income to Mother for computing child support. At the hearing, the magistrate heard testimony that Mother is not currently employed but that she had past experience working part-time during the tax season. Based on that testimony, the magistrate imputed an income of $4,680 to Mother for determining the appropriate level of child support under the mandatory worksheet. The trial court adopted the magistrate's finding on this point. Father contends that Mother's level of imputed income should be higher.
We first note the proper standard of review. In Mealey v.Mealey (May 8, 1996), Wayne App. No. 95CA0093, unreported, we held that, when reviewing an appeal from a trial court's adoption of a magistrate's decision under Civ.R. 53(E) (4), we determine whether the trial court abused its discretion in adopting the decision.Id. at 5. "Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision." Id.
An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Under R.C. 3113.215(A)(1)(b) and (5), a trial court may impute potential income to a parent who is voluntarily unemployed or underemployed. "Whether a parent is `voluntarily underemployed' within the meaning of R.C. 3113.215(A)(5), and the amount of `potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case." Rock v. Cabral
(1993), 67 Ohio St.3d 108, syllabus.
In the case at bar, the evidence showed that Mother was not employed on a full-time basis. However, she devoted a significant amount of time to working with Marc on his school assignments and helping in Marc's classroom. She was also formerly employed working on taxes during the tax season. Based on the facts before the magistrate, we cannot say that the trial court acted with passion, prejudice, or the like when it adopted the magistrate's finding that Mother's potential income should be $4,680 for determining child support. Accordingly, Father's fourth assignment of error is overruled.
 E. Fifth Assignment of Error THE TRIAL COURT ERRED WHEN IT MADE ISSUED [sic] A CHILD SUPPORT ORDER, RETROACTIVE TO THE DATE ON WHICH THE MOTION TO MODIFY THE ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES WAS FILED WHERE THERE WAS NO MOTION FILED TO ESTABLISH OR MODIFY CHILD SUPPORT.
 In his fifth assignment of error, Father asserts that the trial court erred by ordering the payment of child support retroactive to December 6, 1996, when Mother filed her motion to modify parental rights and responsibilities. He contends that Mother's motion was insufficient to put the parties on notice that a modification[2] of child support was at issue. We disagree.
 "Absent some special circumstance, a trial court order modifying a child support obligation should be retroactive to the date such modification was first requested." Boldt v. Boldt (Dec. 9, 1998), Summit App. No. 18736, unreported, at
13. However, "due process requires that the defending party receive adequate notice of the motion and the opportunity to present evidence in opposition." Bellamy v. Bellamy (1996),110 Ohio App.3d 576, 581.
In the case at bar, we conclude that the trial court did not abuse its discretion by adopting the magistrate's decision on the issue of retroactive child support. Mother's motion to modify parental rights and responsibilities outlined the change in Marc's living arrangements and included the following language:
 [Mother] further states that, since October 1992, [Father] has not paid her any support for [Marc].
 [Mother] further states that it would be in the best interest of [Marc] that the previous order of this Court be modified and that she be declared his primary residential parent
 We find that this language put Father on notice that child support would be an issue in the motion before the trial court. Due process was thereby satisfied, and the trial court did not abuse its discretion by making child support retroactive to the date that Mother moved to modify parental rights and responsibilities. The fifth assignment of error is overruled.
 F. Sixth Assignment of Error THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 In the sixth and final assignment of error, Father takes issue with the designation of Mother as the primary residential parent of Marc and the time Marc would spend with each parent. He argues that the weight of the evidence would demonstrate that Father should be Marc's primary residential parent. Father's argument is not well taken.
As noted above, a trial court may modify the terms of a shared parenting plan if the modification is in the best interest of the child. R.C. 3109.04(E)(2)(b). Determining the best interest of a child is governed by R.C. 3109.04(F)(1):
 In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
* * *
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
* * *
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court[.]
 We review the trial court's decision to affirm the magistrate under an abuse of discretion standard. Mealey, supra.
At the hearing before the magistrate, Father expressed a desire for Marc to live primarily with him. Likewise, Mother testified that she wished for Marc to live primarily with her. Marc's relationships with his stepparents were described as good. Marc was said to be excited about the birth of a half-sibling (of Father and his wife) in the near future. Marc appeared to be well adjusted socially at the private school where he was enrolled, as well as in the neighborhoods where Father and Mother each reside.
The magistrate also held an interview in chambers with Marc. The magistrate's decision indicated that Marc wished to live with Mother and visit Father. The magistrate's decision also indicated that Marc stated that he had a good relationship with his stepparents on both sides.
Marc's scholastic efforts were a matter of no little discord between Father and Mother. It became apparent in the second grade that Marc was not achieving a high level of success in school. After testing by school officials, it was determined that Marc was of low-average to average intelligence, and that he was most likely capable of producing C-quality work in school, with some B's. However, during the third grade, Marc's performance was far below average for the first three grading periods, marked by D's and F's. He improved slightly after the fourth and final grading period, but his overall performance was still below average. There was no explanation given for the decline in Marc's grades in the third grade.
Father believed that Marc was not doing enough work and was not performing to his full potential. Mother believed that Marc was performing to his potential and suspected that Marc exhibited signs of attention deficit disorder.[3] Mother testified that she worked with Marc on his assigned homework each night and was involved in his classroom. Father testified that he worked on homework with Marc for at least four hours each weekend that Marc was with him.
Upon a review of the record before us, we cannot say that the trial court abused its discretion when it adopted the magistrate's decision, finding that designating Mother as the primary residential parent was in the best interest of Marc. Both parties provided supportive homes for Marc. Marc had apparently become well adjusted to Mother's neighborhood after she became the defacto primary residential parent in late 1992 and had attended the same school since kindergarten. Further, Marc expressed a desire to retain Mother as the primary residential parent. Thus, the trial court's decision did not evidence an abuse of discretion. Accordingly, Father's sixth assignment of error is overruled.
 III.
Father's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Medina, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
 FOR THE COURT
BAIRD, P. J.
WHITMORE, J.
[1] The subdivisions of R.C. 3109.04(E)(2) are labeled as (a), (b), and (d). R.C. 3109.04(E)(2)(b) has two separate paragraphs that appear to address different matters. It is possible that the Ohio General Assembly intended the second paragraph of R.C. 3109.04(E)(2)(b) to be R.C. 3109.04(E)(2)(c), thereby accounting for that missing subdivision of the statute.
[2] The original shared parenting plan did not provide for child support. However, the shared parenting plan proposed by the magistrate and adopted by the trial court did not establish child support in the first instance. See DePalmo v. DePalmo (1997),78 Ohio St.3d 535, 539-40. Rather, the trial court's order modified a pre-existing child support order that did not conform with the mandatory worksheet.
[3] A school official testified that, after testing, attention deficit disorder had been ruled out.