**BELLAMY, Appellant,**

v.

**BELLAMY, Appellee.**

[Cite as *Bellamy v. Bellamy* (1996), 110 Ohio App.3d 576.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–95–057.

Decided April 26, 1996.

*Robert Lehrer,* for appellant.

*Erich J. O'Brien,* for appellee.

SHERCK, Judge.

This accelerated appeal comes to us from a judgment issued by the Erie County Court of Common Pleas, Domestic Relations Division, in a child-support-enforcement case. Because appellant was denied procedural due process as to the trial court's modification of child support, we reverse in part.

Appellant, Teressa Bellamy, and appellee, Terry Lee Bellamy, were divorced in 1980. Pursuant to the divorce decree, appellee was ordered to pay child support in the amount of $25 per week for the couple's minor child. Appellant filed motions in July 1981 and February 1982 to show cause against appellee for failure to pay child support.

In February 1994, appellant, through the Erie County Child Support Enforcement Agency ("ECCSEA"), filed a third motion seeking a show cause hearing and payment of the arrearage. As a result of a hearing held on October 18, 1994,

the parties entered into a consent judgment. That judgment, signed by the parties and their attorneys, was entered on October 27, 1994. In it, the trial court found that appellee was not employed, that appellant was not employed, that neither had earned income, and that appellee was in contempt for failure to pay child support. The court then sentenced appellee to thirty days in jail; however, appellee was given the right to purge himself of the contempt and avoid serving the jail sentence by paying at least $50 per month plus poundage and by seeking work with at least three employers per week. In the alternative, appellee could provide monthly documentation to the ECCSEA from a treating physician that he is unable to work. The trial court then scheduled a review hearing to be held in ninety days as to the liquidation of the arrearage.

On January 20, 1995, the ECCSEA moved for imposition of sentence, stating that appellee had failed to comply with the purge conditions. Various hearing dates were set and then rescheduled. On March 17, 1995, appellee filed a motion to vacate the prior consent judgment entry, arguing that his consent was unintentionally given due to the effects of prescribed medication which he had been taking at that time. Appellee also maintained that he had not been formally apprised of his rights. The trial court conducted a hearing on June 9, 1995, presumably to address the contempt issues.[1]

On July 14, 1995, the trial court issued a judgment vacating the consent judgment. The court then found that appellee's child-support arrearage was $16,791.18, plus $390.10 in administrative-service fees; the court also found that appellee disputed this amount and granted his request to file a brief on the issue of laches. The court also issued an "interim order of child support" in the amount of $35.70 per month ($35 as to current support plus $.70 administrative-service fee.) The court also stated that it would "render a decision regarding [appellant's] Motion to Show Cause and Motion for Payment of Arrears filed on February 22, 1994 on or about August 1, 1995."

Appellee then filed his memorandum as to the issue of laches. Appellee argued that appellant's failure to seek enforcement of the child-support order for over twelve years was an unreasonable delay, prejudicial to him, and that the order should not be enforced. Appellant filed a response in opposition.

In a judgment entry first filed on September 13, 1995 and then amended on September 20, 1995, the trial court found that it could not retroactively modify the previously established child-support obligation, that the child-support amount

---

1. Although the trial court asked appellant a few questions, no formal testimony or evidence was presented by the parties at this hearing.

previously ordered by the court was due and owing and remained unaltered,[2] and that appellant's failure to timely assert her right to the support had a bearing on the nature of appellee's contempt. The court then stated:

"Defendant's [*sic*] Motion for Contempt shall be, and is hereby, held in abeyance for so long as he is in compliance with his weekly [*sic*] support obligation of $35.70 per month as ordered by this Court by Judgment Entry on the 14th day of July, 1995.

"Failure of the Defendant to pay support will cause the Motion for contempt to be set for hearing forthwith."

Appellant now appeals from that judgment, setting forth the following three assignments of error:

"No. 1  The Trial Court Erred By Modifying Defendant/Appellee's Child Support Obligation, *Sua Sponte.*

"No. 2  The Trial Court Erred In Failing To Afford Plaintiff/Appellant A Hearing On Her Contempt Motion Filed Pursuant To O.R.C. Section 2705.031(B).

"No. 3  The Trial Court Erred In Granting Defendant/Appellee's Motion To Vacate The Judgment Entry Filed On October 27, 1994."

We will first address appellant's third assignment of error, in which she argues that the trial court erred in vacating the October 27, 1994 consent-judgment entry.

An order vacating a judgment under Civ.R. 60(B) as to all the claims and parties in an action is a final appealable order. Therefore, it must be appealed within thirty days. *Ashley v. Ashley* (1981), 1 Ohio App.3d 80, 81, 1 OBR 359, 360, 439 N.E.2d 911, 913, quoting *Bates & Springer, Inc. v. Stallworth* (1978), 56 Ohio App.2d 223, 10 O.O.3d 227, 228, 382 N.E.2d 1179, 1181–1182, paragraph four of the syllabus. See, also, R.C. 2505.02 (order vacating or setting aside a judgment is a final order); *Dines v. Spurlock* (Sept. 9, 1994), Clinton App. No. CA94–02–005, unreported, 1994 WL 506204; *Cooper v. Nason* (June 23, 1993), Lorain App. No. 92CA005474, unreported, 1993 WL 216303.[3]

---

**2.** We presume that the court's vague term of "previously ordered support" refers to the arrearage amount of $16,791.18, as stated in its July 14, 1995 judgment entry.

**3.** App.R. 4(A) states that a party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed or in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Civ.R. 58(B). An exception to this rule occurs if an order which is appealable within thirty days does not dispose of all claims as to all parties, other than a judgment or notice of appeal entered under Civ.R. 54(B). In that case, the appeal from the order may be delayed until the trial court disposes of the remaining claims.

In this case, the trial court on July 14, 1995, vacated the previous consent-judgment entry. The vacating order was a final order since it vacated the entire consent judgment. Appellant did not appeal the vacating order until October 11, 1995, well past the thirty-day deadline. Therefore, we are without jurisdiction to address any issues as to the vacating of the judgment entry since the appeal time has run.

Accordingly, appellant's third assignment of error is not well taken.

Appellant, in her first assignment of error, argues that the trial court erred by failing to hold a hearing as to her contempt motion.

R.C. 2705.031(B)(1) provides that any party who has a legal claim to child support may initiate a contempt action for failure to pay such support. R.C. 2705.05 requires the trial court to conduct a hearing as to a charge of contempt and to *"hear any answer or testimony* that the accused makes or offers and shall determine the validity of the contempt charge * * *." (Emphasis added.) However, we can find nothing which requires the trial court to conduct such a hearing within a particular time. Further, without a finding of contempt and sanction, a trial court's action as to a motion for contempt is not final and appealable. See *Chain Bike Corp. v. Spoke 'N Wheel, Inc.* (1979), 64 Ohio App.2d 62, 18 O.O.3d 43, 410 N.E.2d 802, syllabus.

In this case, the trial court chose to hold the motion for contempt "in abeyance" for as long as appellee complied with certain conditions. Since the trial court has not dismissed or ruled on appellant's motion for contempt, the action is still pending. Therefore, because no final appealable order exists, we are without jurisdiction to entertain an appeal.

Accordingly, appellant's first assignment of error is not well taken.

Appellant, in her second assignment of error, contends that the trial court erred in *sua sponte* modifying appellee's child-support obligation.

Generally, a court may only initiate a modification of a child-support order under proper circumstances. *Cooper v. Cooper* (1983), 10 Ohio App.3d 143, 145, 10 OBR 194, 196–197, 460 N.E.2d 1137, 1141. However, a trial court's continuing jurisdiction pursuant to Civ.R. 75(I) may be invoked by the filing of a motion to show cause regarding child-support issues; the trial court then has jurisdiction over any matters related to such motion to show cause, including the modification of support. See *Carson v. Carson* (1989), 62 Ohio App.3d 670, 673, 577 N.E.2d 391, 393; *Jones v. Wells* (Mar. 11, 1992), Summit App. No. 15176, unreported,

1992 WL 48507; *Starcher v. Starcher* (June 16, 1982), Summit App. No. 10501, unreported, 1982 WL 5052.[4]

■ Regardless of the means by which the issue of modification is brought before the court, due process requires that the defending party receive adequate notice of the motion and the opportunity to present evidence in opposition. *Carson, supra,* at 673, 577 N.E.2d at 393; *Gary v. Gary* (Oct. 19, 1988), Summit App. No. 13593, unreported, 1988 WL 110903, citing *Goss v. Lopez* (1975), 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725, and *Fuentes v. Shevin* (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556.

In this case, we conclude that the trial court's *sua sponte* modification was improper for several reasons. First, although appellant invoked the jurisdiction of the trial court by moving for a show-cause hearing, the trial court held the motion in abeyance and never conducted an evidentiary hearing as to the contempt issues. At appellant's inquiry, the court assured appellant that the "interim" modification was a temporary order only and that the court intended to hold a hearing for the presentation of testimony and evidence as to the contempt issues. Nevertheless, no hearing was ever conducted, and the "interim" order became a permanent modification. Therefore, the trial court's modification was unrelated to the contempt proceedings.

Second, the trial court's *sua sponte* modification fails to meet the due process requirements of notice and opportunity to defend. See Civ.R. 75(I). No motion for modification, either written or verbal, was before the trial court. When the court began to discuss modification with appellee's attorney, appellant objected. Since the court issued its modification without determining the contempt issue, appellant was entitled to but did not receive proper notice or an opportunity to refute the court's proposed modification.

■ Finally, whenever the trial court considers the modification of child support, R.C. 3113.215 mandates that the court utilize a properly prepared worksheet to determine the amount of child support to be paid. *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph one of the syllabus. The completed worksheet must be made a part of the record to assist an appellate court when reviewing the proceedings on appeal. *Id.* at 142, 601 N.E.2d at 498.

In this case, the record contains no child-support worksheet nor any other calculations which might indicate the basis for the trial court's modified determi-

---

4. But, see, *Mastandrea v. Spiros* (July 20, 1995), Cuyahoga App. No. 68154, unreported, 1995 WL 428545 (a trial court has no jurisdiction to modify child support without a motion filed by one of the parties, even when such modification was made pursuant to a motion to show cause for failure to pay child support).

nation of child support. No evidence was ever presented as to appellee's income, future employability, or current ability to pay child support.[5] Neither party had the opportunity to present evidence or cross-examine witnesses.[6] In fact, other than a few statements by appellant as to her income, the record is devoid of any documentation whatsoever of the parties' incomes. Further, the September 20, 1995 judgment entry fails to designate whether the new amount is for current child support or arrearage or both. Since the trial court failed to either utilize a child-support worksheet or conduct a proper evidentiary hearing as to the modification, we cannot discern the basis for the trial court's award.

Therefore, the modification was improper because it was was not determined pursuant to the due process requirements of Civ.R. 75(I) or the technical mandates of R.C. 3113.215.

Accordingly, appellant's second assignment of error is well taken.

The judgment of the Erie County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. The judgment is reversed as it concerns the modification of child support and remanded for proceedings consistent with this opinion. Court costs of this appeal are assessed to appellee.

*Judgment affirmed in part*
*and reversed in part.*

HANDWORK and ABOOD, JJ., concur.

---

**5.** Appellee's attorney merely claimed that appellee would be unable to pay $50 per month in support. The record is devoid of any documents or testimony from which the trial court could reasonably determine appellee's ability to pay support.

**6.** The trial court apparently sought to streamline the proceedings by not permitting the parties to present normally admissible testimony or evidence. At one point during the only hearing conducted, the trial court stated:

"Well, I'm accepting [the ECCSEA's] figures [as to child support arrearage] and I'm giving [appellee] the right to dispute those figures based upon whatever evidence they want to put in their briefs. They have the duty to prove you wrong, and they've got to—I'm not going to come in here and hear what your people say and what they say. I want to see the documentation. Either put up or shut up. I don't want to hear it, I want to see it.

"Do you understand, Mr. O'Brien, what I'm saying? If they do not agree with these, I want to see why not. I don't want to hear who said what."

These figures were disputed, but only by way of appellee's brief on the issue of laches. The court later stated:

"I'm not going to go back 15 years and figure out whether—your evidence is just going to contradict each other. You're going to say one thing, you're going to say another; am I correct? You're going to say the referee said don't pay the support, and you're going to say he didn't say that. Am I right, Mrs. Bellamy?"

While we recognize the frustration trial courts must encounter in this type of proceeding, the parties must be allowed to present their own testimony and evidence from which the court may then make its findings of fact. See *Buscema v. Fluegeman* (1980), 70 Ohio App.2d 128, 129, 24 O.O.3d 165, 166–167, 434 N.E.2d 1386, 1387.