DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment issued by the Erie County Court of Common Pleas, Domestic Relations Division in a contempt action concerning the enforcement of child support. Because we conclude that the trial court erred in making its calculations and other determinations related to appellant's child support obligations, we reverse.
Appellant, Terry Bellamy, and appellee, Teressa Bellamy, were divorced in 1980. Appellant was ordered to pay child support for the parties' only child, Mitchell, born May 27, 1979. Since the divorce, various actions and pleadings have been filed regarding child support and visitation; two judgments were previously appealed to us. See Bellamy v. Bellamy (1996), 110 Ohio App.3d 576
and Bellamy v. Bellamy (May 19, 2000), Erie App. No. E-98-034, unreported.
In October 1998, as a result of finding appellant in contempt for failure to pay child support, the trial court conducted a hearing as to appellant's ability to work, current child support arrearage amounts, the emancipation of Mitchell, and the termination of child support. In the previous contempt hearings, undisputed evidence was presented that in May 1997, the Social Security Administration deemed appellant to be permanently and totally disabled because of the following conditions: severe osteopathic arthritis, two collapsed discs in his neck, lupus, and only one functioning lung. Both appellant and Mitchell became eligible for Social Security Administration ("SSA") benefits as a result of appellant's disability.[1] In May 1997, both appellant and his son were awarded benefits retroactive to November 1994. Nothing was offered at the October 1998 hearing to show that this had changed. Evidence was also presented that appellant owed an arrearage for years prior to 1994.
Appellant also filed a motion in limine, stating that appellee had no standing to pursue a claim for child support because, as a recipient of Aid to Dependent Children ("ADC") appellee had signed over her rights to such support to the Erie County or Lorain County Departments of Human Services ("DHS"). Although the Erie County Child Support Enforcement Agency ("ECCSEA") had filed on behalf of appellant, no state agency attempted to intervene or was ever made a party to the case.
At the October 1998 hearing, new contempt charges were considered against appellant. These new charges were filed in March 1998, for appellant's failure to endorse over disability checks which were in excess of a certain dollar amount, as ordered by the court in November 1997.[2] Appellant answered that due to a cost of living increase, all his monthly benefit checks were now over the dollar amount that was originally designated by the court as "lump sum" checks. Appellant argued that signing over every check would result in the garnishing of his entire monthly income — a violation of federal law.
Addressing emancipation issues, appellee's attorney stated that "medical" documents previously submitted supported appellee's claim that Mitchell, whose eyesight is allegedly impaired, could not be emancipated. Appellee presented no current medical evidence regarding Mitchell's alleged disability or incompetence. However, evidence was presented that Mitchell had been taking driving lessons in the expectation of getting a driver's license. The trial court did not speak personally with Mitchell, who was not present during any of the hearings. Evidence was also presented that Mitchell's Supplemental Security Income ("SSI") payments for his own disability had been stopped because the Social Security Administration had determined that he was no longer disabled. Over appellant's objections, the court suasponte appointed a guardian ad litem ("GAL") for then nineteen year-old Mitchell and continued the issue of emancipation pending the GAL's investigation and report.
On April 12, 1999, the trial court issued the following findings and rulings. The court dismissed the March 5, 1998 motions to show cause and to impose sentence for failure to comply with the purge conditions established in its May 18, 1998 judgment entry. The court alluded to its appointment of a guardian ad litem for Mitchell, finding that he has "a medical condition which may preclude him from being capable of independent living, and consequently, being emancipated for child support purposes." The court then dismissed appellant's motionin limine, ruling that appellee had standing, through the ECCSEA, to file the motions for contempt.
The court then found that, for the period of 1994 forward, the original child support order of $25 per week plus poundage and processing fees (a monthly obligation of $110.50) should continue. The court made no further determinations as to any arrearage amount prior to 1994. The court further found that Mitchell was not receiving disability payments either from his own disability (SSI) or from his father's disability (SSA). Consequently, the court ruled that application of the "McNeal
Formula" to credit appellant for child support, was not war ranted.
Appellant now appeals from that judgment, setting forth the following eleven assignments of error:
 "1. The Trial Court lacked jurisdiction to appoint a Guardian ad litem for a competent adult, who is under no legal disability.
 "2. The Trial Court's ruling that Mitchell Bellamy has a medical condition, which may preclude him from being emancipated, was against the manifest weight of the evidence.
 "3. The Trial Court's decision that Mitchell Bellamy has a medical condition, which may preclude emancipated [sic] was an abuse of discretion.
 "4. The Trial Court erred to the prejudice of the Defendant by dismissing the Motion in Limine.
 "5. The Trial Court's dismissal of the Motion In Limine was against the manifest weight of the evidence.
 "6. The Trial court erred to the prejudice of the Defendant in holding that the CSEA represented the State of Ohio.
 "7. The Trial court [sic] decision to order continuing child support for a competent adult, who is under no legal disability, is an abuse of discretion.
 "8. The Trial court erred to the prejudice of the Defendant by failing to credit Social Security dependency benefits paid as a result of defendant's disability.
 "9. The Trial Court's holding that the "McNeal Formula" does not apply in this matter is an abuse of discretion.
 "10. The Trial Court erred to the prejudice of the Defendant by ordering withholding from his Social Security disability for current support of a competent adult under no legal disability.
 "11. The trial court erred to the prejudice of the Defendant by assessing all costs to Defendant."
 I.
We will address appellant's assignments of error out of order. In his first three assignments of error, appellant essentially argues that since no evidence was presented to show that Mitchell is under a legal disability, the court's findings that Mitchell has a medical condition that may preclude emancipation and that a guardian ad litem should be appointed for him were against the manifest weight of the evidence. We agree.
When reviewing a particular finding by a domestic relations court, an appellate court uses a manifest weight standard. SeeJames v. James (1995), 101 Ohio App.3d 668, 684. A trial court's finding of fact will not be reversed if supported by some competent, credible evidence. C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus.
All persons of eighteen years of age who are no longer attending high school are considered of the age of majority, and thus "emancipated," unless evidence is presented to show that the child is under a "legal disability." See R.C. 3109.01. For purposes of child support, eighteen-year-old persons with handicaps are not presumed to be under a legal disability. SeeCooksey v. Cooksey (1988), 55 Ohio App.3d 135 (parent owes no duty to support epileptic emancipated child who is capable of being self-supporting). Additionally, Civ.R. 75(B)(2) provides for the appointment of a guardian ad litem in divorce actions, but only when it is essential to protect the interests of a minor child. Generally, the appointment is within the discretion of the trial court. Pruden-Wilgus v. Wilgus (1988), 46 Ohio App.3d 13,16.
In this case, other than a portion of a ten-year-old newspaper article, we can find nothing in the record regarding Mitchell's "medical condition." The only "evidence" presented in this case regarding Mitchell's condition and abilities was that while he may still have some visual impairment, he is learning to drive a motor vehicle. Moreover, the Social Security Administration no longer considers him to be disabled in order to be eligible for SSI benefits. We note that the trial court did not interview Mitchell. In our view, since nothing in the record shows that Mitchell has an impairment that precludes him from ever being self-supporting, appellee failed to meet her burden to establish that Mitchell, over the age of eighteen and graduated from high school, is under a legal disability. Therefore, the trial court's finding that he has a "medical condition which may preclude him from being capable of independent living" and from being emancipated was not supported by the record.
Likewise, since nothing in the record establishes that Mitchell was under a legal disability for purposes of emancipation, we conclude that the appointment of a guardian ad litem was also without basis.
Accordingly, appellant's first three assignments of error are well-taken.
 II.
Appellant, in his seventh and tenth assignments of error, argues that the trial court erred in continuing child support orders for a competent adult under no legal disability.
Based upon our disposition of appellant's first three assignments of error, we agree.[3]
Accordingly, appellant's seventh and tenth assignments of error are well-taken.
 III.
Appellant, in assignments of error four, five, and six, contends that the trial court's dismissal of the motion inlimine was prejudicial error. Appellant argues that appellee had no standing to bring the contempt action because she had assigned her rights to the state of Ohio. Appellant also contends that, since the state of Ohio or Department of Human Services was not made a party to the proceedings, ECCSEA did not represent the state's interests as to reimbursement of ADC payments.
The state of Ohio has a legitimate governmental interest in enforcing all child support actions. Cuyahoga Cty. SupportEnforcement Agency v. Lozada (1995), 102 Ohio App.3d 442,455-456. R.C. 2705.031(B)(1) provides the local child support enforcement agency with the power to institute a contempt motion against a child support obligor. Collins v. Collins (1998),127 Ohio App.3d 281, 284; Hurchanik v. Hurchanik (Aug. 26, 1991), Warren App. No. CA90-09-066, unreported. See, also, Krachtv. Kracht (Apr. 18, 1996), Cuyahoga App. Nos. 68281, 68985, unreported; Anspach v. Anspach (Apr. 27, 1992), Hardin App. No. 6-91-8, unreported. R.C. 2705.031 (B)(1) states as follows:
 "Any party who has a legal claim to any sup port ordered for a child, spouse, or former spouse may initiate a contempt action for failure to pay the support. In Title IV-D cases, the contempt action for failure to pay support also may be initiated by an attorney retained by the party who has the legal claim, the prosecuting attorney, or an attorney of the department of human services or the child support enforcement agency."
In an action for the collection of support payments owed to the state, it is mandatory that the county child support enforcement agency be made a party in the suit. R.C. 3111.07.
In the present case, ECCSEA was authorized to file the motion for contempt as to the support owed to appellee. Although certain amounts of the arrearage may be owed to DHS, and that agency or ECCSEA were never added or joined as a party, the court's jurisdiction was properly invoked as to the child support owed to appellee. Therefore, since ECCSEA could legally represent appellant's interests, the denial of appellant's motion inlimine was not prejudicial.
Accordingly, appellant's fourth, fifth, and sixth assignments of error are not well-taken.
 III.
Appellant, in his eighth and ninth assignments of error, argues that the trial court erred by failing to use the "McNeal
Formula" to give him credit for Social Security payments made to Mitchell as a result of appellant's disability.
Payments to children received from Social Security pursuant to a parent's disability should be credited towards the child support obligation of the parties. McNeal v. Cofield (1992),78 Ohio App.3d 35, 39; Barnett v. Hanson (Oct. 31, 1997), Erie App. No. E-97-050, unreported.[4] The McNeal formula provides that the amount received from the payments is to be deducted first from the total child support obligation. Id. The remaining support amount is then allocated between the parents according to the percentages determined by the child support guidelines. Id.
In this case, despite the fact that the Social Security representative testified that Mitchell had begun receiving checks and would receive $207 per month retroactive to November 1994, the trial court determined that the McNeal formula did not apply. We conclude that this determination was also not supported by the facts and was prejudicial error.
During the time that appellant was eligible for disability payments, from November 1994 to the time of Mitchell's graduation in June 1998, any amounts received by Mitchell due to appellant's disability should be subtracted from the joint child support obligation of the parties. The remaining amount owed, if any, should then be allocated to appellant and appellee according to percentages from their incomes as shown on the child support worksheet.[5] Since we do not have the exact amounts of the monthly or lump sum payments paid to Mitchell, we regretfully must leave those calculations to the parties and the trial court upon remand.
We also note that during the contempt hearings, appellant provided documentation as to paid arrearages in the form of a letter issued by the ECDHS in April 1987 which stated that he owed no arrears in child support at that time. We conclude that it was reasonable for appellant to rely on such a letter. In addition, while such letter does not establish that child support had been permanently terminated, it does provide credible evidence that at one point appellant's "slate was clean" with the DHS. Therefore, appellant's arrearages for the purposes of what may be owed to DHS should be calculated from the date of that letter to June 1998, the date of Mitchell's graduation.
Accordingly, appellant's eighth and ninth assignments of error are well-taken.
 IV.
Appellant, in his eleventh assignment of error, claims that the trial court erred by assessing all costs of the proceedings to him.
R.C. 3109.05(C) permits a trial court to assess all court costs arising out of the contempt proceeding against a person found in contempt for failure to comply with an order to pay child support. A trial court has broad discretion in assessing such costs and its ruling will not be overturned on appeal absent an abuse of that discretion. Howard v. Wills (1991), 77 Ohio App.3d 133,137.
In the instant case, the judgment entry being appealed from provides that the court dismissed the motion for order to show cause; thus, appellant was not found to be in contempt. Moreover, appellant's motion for emancipation was improperly continued and appellant's child support arrearage and credits were improperly determined. Therefore, we conclude that, under the circumstances in this case, the trial court abused its discretion in assessing all costs to appellant.
Accordingly, appellant's eleventh assignment of error is well-taken.
The judgment of the Erie County Court of Common Pleas, Domestic Relations Division, is reversed in part and remanded to the trial court for proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
JUDGMENT REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________________ JAMES R. SHERCK, J.
 RICHARD W. KNEPPER, P.J. JUDGE, MARK L. PIETRYKOWSKI, J.
JUDGE, CONCUR.
[1] Appellant has another son, from another marriage, who was living with him, and who was also eligible for benefits.
[2] In November 1997, the trial court impounded the remainder of appellant's lump sum benefits ($2,197) and also ordered appellant to endorse over to his then attorney, any SSA checks that exceeded $724. As a result of the termination of the previous withholding order and an increase from SSA, appellant's monthly disability checks were all over $724. Although appellant continued to pay the original $110.50 per month as previously ordered, he did not sign over the checks.
[3] Upon remand it is imperative that the records be scrutinized carefully to determine how much child support is owed by appellant and what credits he should receive, including: any payments made from the proceeds of the sale of a house; income tax refund garnishments; payments garnished during the time appellant was eligible for or receiving disability payments; and lump sum payments to appellant or Mitchell due to retroactive disability payments.
[4] Some Ohio courts have applied a different method to allocate social security payments received by a child due to a parent's disability. See, e.g., In re Mudrak (Jan. 22, 1997), Belmont App. Nos. 94-B-32, 94-B-38, unreported; McClure v.McClure (Sept. 27, 1996), Greene App. No. 95-CA-86, unreported;Edmonds v. Edmonds (Sept. 19, 1994), Athens App. No. 93 CA 1604, unreported. In those cases, the disability income received by the child is added to the disabled parent's income before
child support is calculated. The disabled parent then receives a "credit" against his or her child support obligation for the payments received by the child. In our view, McNeal represents the better approach to calculating the credit received by the disabled parent.
[5] Appellant's income from November 1994 to the present should be based upon his disability payments. Appellee's income was imputed by the court.