OPINION
{¶ 1} Appellant, Linda Ratliff, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of her minor child, Prentiss Ratliff, to appellee, Franklin County Children Services ("FCCS"), for purposes of adoption. Appellant and Robert Ratliff are the natural parents of Prentiss Ratliff, who was born February 27, 1995. For the following reasons, we affirm.
 {¶ 2} On January 17, 2002, FCCS filed a complaint alleging that Prentiss was a neglected child, pursuant to R.C. 2151.03(A)(2), and a dependent child, pursuant to R.C. 2151.04(C). The trial court appointed a guardian ad litem for the child and appointed separate attorneys for the mother and the father.
 {¶ 3} On March 14, 2002, and subsequent to an adjudicatory hearing on the neglect and dependency causes of action, the trial court found Prentiss to be a dependent minor, as defined in R.C. 2151.04(C). The neglect action was dismissed. The trial court ordered temporary commitment of custody of Prentiss to FCCS, pursuant to R.C. 2151.353(A)(2). The trial court also approved and adopted a case plan and made the case plan an order of the court. The case plan required, inter alia, the parents to secure and maintain stable independent housing, attend domestic violence and parenting classes, and demonstrate parenting skills necessary to meet the child's needs. Regarding visitation, the case plan provided that visitation occur at a "minimum of once weekly."
 {¶ 4} On January 14, 2003, FCCS moved for permanent custody of Prentiss, pursuant to R.C. 2151.413. Apparently, in late 2003, FCCS orally moved for the termination of appellant's visitation with Prentiss. On December 4, 2003, the trial court overruled FCCS's motion to terminate visitation.
 {¶ 5} On February 11, 2004, appellant moved the trial court to find FCCS and caseworker Julia L. Brown guilty of contempt of court for failure to obey an order of the court in regard to visitation between appellant and the minor child. An affidavit was submitted in support of her motion in which appellant indicated her desire for weekly visits with her son.
 {¶ 6} Trial was held in this case on March 10, 11, and June 28, 2004.
 {¶ 7} On the third day of trial, the trial court conducted an in-camera interview of the child, Prentiss, who was nine years old at the time. Prentiss was not under oath. The court interviewed Prentiss and permitted the parties' attorneys to ask Prentiss questions.
 {¶ 8} In its July 19, 2004 decision, the trial court determined that "[i]t is in the best interest of the child to permanently commit the child to Franklin County Children Services." The trial court also concluded that "the child cannot be placed with either parent within a reasonable time or should not be placed with either parent in the foreseeable future." Regarding that conclusion, the trial court found that the "parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the house for over two years."
 {¶ 9} The trial court accordingly committed the child to the permanent custody of FCCS for purposes of adoption and terminated the parental rights of the mother, appellant, and the father, Robert Ratliff. The court further ordered that "[p]ending appeal time, or appeal, visitation shall continue on alternate weekends with mother and grandmother."
 {¶ 10} Ms. Ratliff appeals from this judgment and has asserted the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
The Trial court Erred to the Prejudice of Linda Ratliff by Failing to Rule on her Motion for Contempt, and by Failing to Grant It.
SECOND ASSIGNMENT OF ERROR:
The Trial court Erred in Permitting Prentiss Ratliff, a Minor Child, to Testify in the FCCS' Case-in-Chief.
THIRD ASSIGNMENT OF ERROR:
The Trial court Erred in Ordering Permanent Commitment of Prentiss Ratliff to the Franklin County Children's Services Because the Agency Failed to Prove its Case by Clear and Convincing Evidence as required by O.R.C. Section 2151.414(B)(1), Because the Holding was not supported by Sufficient Evidence, and because the Holding was against the Manifest Weight of the Evidence.
FOURTH ASSIGNMENT OF ERROR:
The Trial court Erred and Abused its Discretion by Granting Permanent Custody Without Considering the Reasonable Accommodation Requirements of the Americans With Disabilities Act, 42 U.S.C. Section 12132, and the Rehabilitation Act of 1973, 29 U.S.C. Section 794.
 {¶ 11} By her first assignment of error, appellant asserts that the trial court erred by failing to rule on her motion for contempt and by failing to grant it. As outlined above, on February 11, 2004, appellant moved for the trial court to find FCCS and Julia Brown in contempt of court. Appellee FCCS argues that the trial court never ruled upon appellant's motion for contempt, and therefore this court lacks jurisdiction to assess appellant's assignment of error regarding the motion for contempt.
 {¶ 12} In view of the record before this court, we find that at the time appellant filed her notice of appeal, the trial court had not expressly ruled upon appellant's motion for contempt. As appellant states in her appellate brief, at 11, "[t]he trial court failed to rule on the contempt motion, and provided no reason in its entry for declining to do so." Because the trial court had not ruled upon appellant's motion for contempt, it was still pending at the time the notice of appeal was filed.
 {¶ 13} We recognize that "[g]enerally, when a trial court fails to rule on a motion, the appellate court will presume the trial court overruled the motion." Dozer v. Dozer (1993), 88 Ohio App.3d 296, 303. However, we are unwilling to apply this general principle to the case at bar. We find that this court lacks jurisdiction regarding appellant's first assignment of error, as the record contains no express determination by the trial court as to this motion for contempt. Alternatively stated, there is no final appealable order with respect to appellant's motion for contempt, which this court may properly review. Consequently, we dismiss appellant's first assignment of error.
 {¶ 14} In her second assignment of error, appellant argues that the trial court erred by conducting an in-camera interview with the child. Preliminarily, we note that Prentiss was not under oath when he was questioned in an in-camera interview. Appellant did not object to Prentiss not being under oath during the in-camera interview.
 {¶ 15} Pursuant to R.C. 2151.414(D)(2), in determining the best interest of the child, the court must consider the wishes of the child, as expressed directly by the child or the child's guardian ad litem, with due regard to the maturity of the child. Therefore, "a juvenile court has the option of either having the child assert his or her opinion, through, for example, an in-camera interview or testimony, or the court may rely upon the guardian ad litem's representations with respect to the child's desires." In re Funk, Portage App. No. 2002-P-0035, 2002-Ohio-4958, at ¶ 30. The decision of whether to hold an in-camera interview is discretionary. See In re Wright, Franklin App. No. 04AP-435, 2004-Ohio-4045, at ¶ 18. We find nothing in the record demonstrating that the trial court abused its discretion by conducting an in-camera interview of Prentiss.
 {¶ 16} Appellant argues that FCCS did not comply with the disclosure requirements of Juv.R. 24, and that she was thereby prejudiced by this noncompliance. This argument is premised on the assertion that Prentiss was called to testify as a witness on behalf of FCCS. However, the record reveals that Prentiss was not called to testify as a witness under oath on behalf of FCCS. In this case, the trial court decided, within its discretion, to conduct an in-camera interview of Prentiss. Thus, we find appellant's argument on this issue to be unpersuasive. Considering the foregoing, we overrule appellant's second assignment of error.
 {¶ 17} By her third assignment of error, appellant asserts that FCCS failed to prove its case by clear and convincing evidence, that the decision of the trial court was not supported by sufficient evidence, and that the decision was against the manifest weight of the evidence. Appellant also argues that "reasonable efforts were not made to prevent the need for placement and to enable the child to return safely home, as required by O.R.C. Section 2151.419(A)(1). Due to the deficiencies in referrals and reunification efforts, there was insufficient evidence that the child could not be placed with Ms. Ratliff in the foreseeable future." (Appellant's brief, at 18.)
 {¶ 18} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. This standard applies to the review of permanent custody judgments. See, e.g., In re Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580, at ¶ 48, citing In re Brofford (1992),83 Ohio App.3d 869, 876-877. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 19} "It is well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Hayes (1997), 79 Ohio St.3d 46,48, citing In re Murray (1990), 52 Ohio St.3d 155. Furthermore, "[p]ermanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.' * * * Therefore, parents `must be afforded every procedural and substantive protection the law allows.'" In re Hayes, at 48, quoting In re Smith
(1991), 77 Ohio App.3d 1.
 {¶ 20} Pursuant to R.C. 2151.414(B)(1), a court may grant permanent custody of a child to a state agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twentytwo month period ending on or after March 18, 1999.
 {¶ 21} The requirements of R.C. 2151.414(B)(1) must be established by clear and convincing evidence. Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Inre Estate of Haynes (1986), 25 Ohio St.3d 101, 104.
 {¶ 22} When determining the best interest of a child at a permanent custody hearing, the trial court shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and outof-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
 {¶ 23} With respect to R.C. 2151.414(B)(1)(a), in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, R.C. 2151.414(E) provides that "the court shall consider all relevant evidence." R.C. 2151.414(E) also enumerates circumstances which, if found to exist, require the trial court to make the above finding. See R.C. 2151.414(E)(1)-(16).
 {¶ 24} In this case, the trial court relied upon R.C. 2151.414(E)(1) as a basis for finding that the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. R.C. 2151.414(E)(1) provides as follows:
Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 25} The record supports the trial court's decision to grant permanent custody of Prentiss to FCCS. More specifically, the record contains sufficient clear and convincing evidence supporting the trial court's determinations that permanent custody is in the child's best interest and that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent in the foreseeable future.
 {¶ 26} Tequilia Buckhanon, who changed her surname to Colvin ("hereinafter Ms. Colvin"), a caseworker for FCCS who was assigned to this case in August 2002, testified at trial. Ms. Colvin testified that she was present at many visitations between Prentiss, appellant, and Prentiss's grandmother, and that during one visit Prentiss slapped his mother on her face "because she had told him to come back into the room after he left out of the visiting room." (Mar. 10, 2004, Tr. 84.) According to Ms. Colvin, appellant never used physical discipline during visits, but she did threaten Prentiss by saying "she was going to whip him." Id. at 199. Regarding whether a bond exists between appellant and Prentiss, Ms. Colvin's descriptions of the visitations reasonably indicated a lack of connection between appellant and Prentiss, as there was limited interaction between the two when they were together for the visitations. Ms. Colvin also testified that Prentiss's behavior has improved since he was placed in foster care.
 {¶ 27} Phyllis Ratliff, Prentiss's paternal grandmother, testified as to how Prentiss's parents disciplined Prentiss when he and his parents were living in her home. According to Phyllis, "[t]hey would smack him in the face. * * * They just used their hands and their fists on him." Id. at 223-224. Phyllis also discussed appellant hitting Prentiss with a "big thick belt" that had been folded and wrapped with tape. Id. When asked whether she had any fear for Prentiss when he lived in her home, Phyllis responded by stating, "Sometimes I did. And I know I should have had him taken out a long time ago. And if I'd known that he would've ended up in a nice home like he — in the foster home that he's got now, I would have turned them in a long time ago and him taken out [sic]." Id. at 225. According to Phyllis, she observed Prentiss say, "I don't want kissed" and would "draw away" from his mother when she would attempt to hug or kiss him. Id. at 239. Phyllis indicated that she had to persuade Prentiss to get out of the car at visitations, and she indicated that there was no problem in getting Prentiss to leave the visits.
 {¶ 28} Thea McClaskey, Prentiss's foster mother, testified at trial. Ms. McClaskey testified that Prentiss began living in her home in November 2001, when he was six years old. Thus, at the time of trial, Prentiss had been in Ms. McClaskey's home for over two years. By her testimony, Ms. McClaskey demonstrated an interest in adopting Prentiss. Ms. McClaskey described Prentiss's unruly behavior when she met him, which included verbal abuse directed toward her, profanity, and physical aggression. Ms. McClaskey indicated that his behavior was "the worst" for the first week. (Mar. 11, 2004, Tr. 31.) Ms. McClaskey indicated that she addressed Prentiss's behavior by revoking privileges and imposing "time outs," as well as rewarding Prentiss for positive behavior. She described improvements in Prentiss's behavior. Therefore, evidence at trial indicated positive changes in Prentiss's behavior as a consequence of his placement in Ms. McClaskey's home.
 {¶ 29} Dr. Randy Shively, a psychologist, conducted separate evaluations of Prentiss and appellant on January 29, 2002, and testified at trial regarding these evaluations. Dr. Shively determined appellant's I.Q. score to be within the mildly mentally retarded range. However, Dr. Shively did not diagnose appellant as mentally retarded because he was unable to sufficiently assess her adaptive skills.
 {¶ 30} Based on his assessment of appellant, Dr. Shively concluded that appellant "has a limited understanding of how to protect Prentiss, or what's wrong with her husband hitting his aunt." Id. at 109-110. Dr. Shively diagnosed appellant as having "dependent personality disorder." Id. at 116. Regarding dependent personality disorder, Dr. Shively testified as follows: "Somebody with a dependent personality disorder typically would not initiate doing things on their own, so I would still think she would need counseling, sure, that wouldn't change that at all. A personality disorder is something that's long term, pervasive * * * and you wouldn't expect to go away." Id. at 163. Dr. Shively determined that, in his opinion, "she'd have a very poor probability of protecting him from an abusive situation." Id. at 115.
 {¶ 31} Regarding appellant's awareness of Prentiss's special needs, Dr. Shively testified as follows:
* * * [S]he did not understand attention deficit issues, which is one of the diagnosis [sic] I gave him. And when we talked further about it she said, "I need to take care of him and love on him", that was her synopsis of how to handle his special needs. But she definitely did not understand any specifics about his issues.
Id. at 107.
 {¶ 32} Dr. Shively described an event that occurred on the day of the psychological assessments in which appellant did not acknowledge or greet Prentiss in the waiting area, even though it was apparently the first time she had seen him that day. Dr. Shively found it "very strange, that she did not — she walked by him like she didn't know him; didn't say a word." Id. at 110. It is reasonable to view this testimony, along with the testimony regarding the visitations, as indicating a lack of a bond between appellant and Prentiss.
 {¶ 33} Other evidence supports the trial court's finding that permanent custody is in Prentiss's best interest. Regarding the custodial history of the child, it is clear that Prentiss has been in the temporary custody of FCCS since at least early 2002. With respect to the wishes of the child, Prentiss revealed, via the in-camera interview, that he wanted to live with his foster parents. He also indicated that he did not want to live with his mother. Finally, we note that testimony at trial indicated that the father, Robert Ratliff, is incarcerated and has confessed to murder.
 {¶ 34} Upon our review of all the evidence in this case, including the evidence discussed above, we find that the trial court's determination that FCCS had established, by clear and convincing evidence, that permanent custody of Prentiss to FCCS is in the child's best interest, was supported by some competent, credible evidence.
 {¶ 35} In view of the evidence at trial, we also find that sufficient evidence supports the trial court's finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Namely, some competent, credible evidence supports the trial court's R.C. 2151.414(E)(1) finding. Although appellant may have completed parenting classes, testimony at trial indicated that she failed to adequately demonstrate, at the visitations, parenting skills necessary to meet the needs of the child, as was required under the case plan. Additional testimony indicated that the extent of meaningful interaction between appellant and Prentiss at the visitations was minimal. Furthermore, testimony at trial revealed appellant's continued inability to provide stable, independent housing for the child, as was required under the case plan.
 {¶ 36} Also in regard to the trial court's finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, appellant has argued that FCCS failed to make reasonable efforts for the return of Prentiss to appellant. Appellant seems to argue that FCCS failed to meet the requirements of R.C. 2151.414(E)(1) and/or 2151.419 concerning the efforts of the agency to assist the appellant. In her appellate brief, appellant points to additional things that FCCS could have done in this case. We find this argument to be unpersuasive. "[T]he issue is not whether there was anything more that [the children's services agency] could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of this case." In the Matter of AnthonyLeveck, Hancock App. No. 5-02-52, 2003-Ohio-1269, at ¶ 10. Here, we find no error in the trial court's conclusion that reasonable efforts were made to facilitate Prentiss returning to appellant, including its finding that FCCS "has made diligent efforts to engage the family in relevant services." Significantly, testimony at trial indicates that FCCS made efforts to accommodate appellant's needs in order to ensure appellant understood the case plan and her obligations thereunder. Also, appellant was referred to domestic violence and parenting classes, as well as mental health counseling, in an attempt to facilitate reunification.
 {¶ 37} Considering the foregoing, we conclude that the judgment of the trial court granting permanent custody of the minor, Prentiss Ratliff, to FCCS for purposes of adoption was not against the manifest weight of the evidence.
 {¶ 38} Consequently, we overrule appellant's third assignment of error.
 {¶ 39} Under her fourth assignment of error, appellant argues that FCCS failed to provide appellant with reasonable accommodations in view of her disability, and thereby failed to comply with the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973.
 {¶ 40} "`Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed.'" State exrel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 81, quotingGoldberg v. Indus. Comm. (1936), 131 Ohio St. 399, 404. Appellant waived her right to raise the issue of FCCS's alleged violation of the ADA and the Rehabilitation Act in this appeal, as this issue was not raised in the trial court. See In re Andy-Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312, at ¶ 23; In Matter of Shawn W. (Sept. 30, 1996), Lucas App. No. L-95-267.
 {¶ 41} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 42} For the foregoing reasons, appellant's second, third, and fourth assignments of error are overruled. Appellant's first assignment of error is dismissed for want of jurisdiction. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.