[Cite as *Elwood v. Elwood*, 2016-Ohio-8205.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

PATRICIA ELWOOD,

                                    CASE NO. 6-15-10

    PLAINTIFF-APPELLEE,

    v.

RICHARD ELWOOD,                       O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Domestic Relations Division
Trial Court No. 20123095 DRB

**Judgment Affirmed**

Date of Decision: December 19, 2016

APPEARANCES:

    *Michael J. Malone* for Appellant

    *Scott A. Kelly* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Richard Elwood ("Richard") brings this appeal from the judgment of the Court of Common Pleas of Hardin County, Domestic Relations Division. Richard challenges the trial court's valuation of the contracts for the sale of corn and the corn in the silos as being against the manifest weight of the evidence. For the reasons set forth below, the appeal is affirmed.

{¶2} Richard and Patricia Elwood ("Patricia") were married on December 6, 1980. Doc. 1. On Sept 7, 2012, Patricia filed a complaint for divorce. *Id*. An amended complaint for divorce was filed on September 18, 2012. Doc. 6. Richard filed his answer to the amended complaint and a counterclaim for divorce on October 18, 2012. Doc. 12. A final hearing for the purpose of valuation of the marital assets and liability was held on March 31, 2014, and that date was set as the termination date of the marriage. Doc. 57 and 59. Both parties submitted written closing arguments to the trial court. On June 4, 2014, the parties submitted joint trial stipulations. Doc. 63. The trial court filed findings of fact and conclusions of law on July 24, 2014. Doc. 67. The trial court stated that it still had left to determine the value of the household goods, furnishings, antiques, and collectibles, and that it still had to allocate the marital estate. *Id.* at 4. The trial court indicated the following concerning the antiques and collectibles owned by the parties.

> **During the marriage Richard and Patricia accumulated a considerable quantity of antiques and furnishings. They bought**

and sold antiques and collectables over a period of 20 years and are self-educated as to values. Both actively participated in the business. Richard acknowledged that Patricia "was the expert" but that after separation he continued to stay active in the antique business. He has antiques for sale at Jeffreys, [an antique "mall" in Hancock County].

They have no written inventory of the hundreds of items in their collection. Richard: "The house is full of stuff." There is no independent evidence of the fair market value of the antiques and other furnishings. As to the valuation of their antiques and collectables, Patricia was asked if the whole market has "gone south" to which she responded, "a lot of it is down." Richard placed the total valuation at between $100,000 and $150,000. Patricia placed the "ball-park value" of their collection at between $250,000 and $300,000.

In her testimony, Patricia opined that she has in her possession approximately one-third of the collection. It is unclear to the Court if she meant one-third of the quantity or one-third of the value or both. Richard testified: "I have half." In closing argument she requested the Court to allocate the division as $100,000 to her and $200,000 to Richard.

The Court agrees with Richard's closing argument that anything the Court could do by way of "cash adjustment" would be based on speculation. "[Findings of value must be made so that equality may be examined." Eisler v. Eisler, (1985) 24 Ohio App.3d 151, 152, 493 N.E.2d 975 (11th District). "[I]t is error for the trial court to fail to make a finding as to the fair market value of the items of personal property in the parties' possession and make an equitable distribution of the properties." Id. at syllabus.

The personal property consisting of antiques, collectables, household furniture and furnishings of the Parties has not been adequately inventoried, identified, or valued such that the Court can make an equitable division thereof. The Court raised this concern at trial and suggested possible solutions. In closing argument, Richard recommended an order for mediation or public auction.

> **The Court determines it necessary to retain jurisdiction as to the value and the equitable division of the antiques, household furnishings, and the trailer. Should the Parties fail to reach an agreement, with or without the assistance of mediation, as to an equitable distribution of this property within 60 days of this decision, the Court will order an inventory and appraisal or, alternatively, an inventory and auction. (Consideration should be made as to values in Chicago, Illinois, vs. values in Hardin County, Ohio.)**

*Id.* at 11-12. Based upon these findings, the trial court ordered in its September 22, 2014, Judgment Entry Decree of Divorce that the trial court would retain jurisdiction over the valuation and equitable division of the items. Doc. 72 at 5. The Decree of Divorce did not contain any indication that it was a final appealable order even though not every outstanding issue was resolved. Civ.R. 54(B).

{¶3} On March 23, 2015, Richard filed a Show Cause Motion against Patricia for not complying with the trial court's orders regarding the transfer of property to Richard. Doc. 99. A hearing on the motion was held on April 1, 2015. Doc. 101. On April 14, 2015, an agreed judgment entry was filed indicating the "parties have reached an agreement that resolves all matters except for [those contained in clause #11]" before the court. Doc. 106. The only outstanding issue was the amount of damages to be awarded to Richard for Patricia's contempt of court. *Id.* at 3. However, there was no reservation of jurisdiction by the trial court as to any other matter. *Id.* On August 28, 2015, the trial court entered judgment finding Patricia to be in contempt of court for not transferring the deeds as required by the court order and ordered her to pay $11,077.30 to Richard. Doc. 114. Richard

-4-

filed his notice of appeal from this judgment on September 24, 2015. Doc. 115. On

appeal, Richard raises the following assignment of error.

> **The trial court's determination that the after tax value of the contracts for the sale of corn and the corn in the silos is $485,000 is against the manifest weight of the evidence and should thus be reversed.**

{¶4} On appeal, Patricia argues that the appeal should be dismissed as

untimely because the actual judgment from which Richard is appealing was filed on

September 22, 2014. Thus the initial question is when a final, appealable order was

entered from which this court would have jurisdiction to address the merits.

Generally, a notice of appeal must be filed within 30 days of a final appealable

judgment. App.R. 4(A)(1). A motion to show cause is not one of the post-judgment

motions that tolls the time for the filing of the notice of appeal. App.R. 4(B)(2). A

final order is defined in pertinent part as follows.

> **(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:**
>
> **(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;**
>
> **(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;**
>
> **(3) An order that vacates or sets aside a judgment or grants a new trial;**
>
> **(4) An order that grants or denies a provisional remedy and to which both of the following apply:**

**(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.**

**(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.**

**\* \* \***

R.C. 2505.02. A judgment entry that does not address all the claims of the parties is not a final appealable order unless the trial court expressly determines "that there is no just reason for delay." Civ.R. 54(B).

**For purposes of Civ.R. 54(B), the court shall not enter final judgment as to a claim for divorce, dissolution of marriage, annulment, or legal separation unless one of the following applies:**

**(1) The judgment also divides the property of the parties, determines the appropriateness of an order of spousal support, and where applicable, either allocates parental rights and responsibilities, including payment of child support, between the parties or orders shared parenting of minor children;**

**(2) Issues of property division, spousal support, and allocation of parental rights and responsibilities or shared parenting have been finally determined in orders, previously entered by the court, that are incorporated into the judgment;**

**(3) The court includes in the judgment the express determination required by Civ.R. 54(B) and a final determination that either of the following applies:**

**(a) The court lacks jurisdiction to determine such issues[.]**

Civ.R. 75(F). "A Court of Appeals is without subject matter jurisdiction to review a judgment of divorce that does not make a final determination as to the division of

-6-

all of the parties' marital assets and debts." *Gilleo v. Gilleo*, 3d Dist. Mercer No. 10-09-09, 2009-Ohio-5431, ¶ 10. This court has previously held that a judgment that fully distributes all marital assets and liabilities is a final appealable order. *See Cornell v. Rudolph Foods, Inc.*, 3d Dist. Allen No. 1-10-89, 2011-Ohio-4322 (finding that appellant could not bring the cause of action because it should have been raised in the divorce proceedings, which included a final, appealable order that disposed of all marital assets and liabilities) and *Johnson v. Johnson*, 194 Ohio App.3d 664, 2011-Ohio-3001, 957 N.E.2d 805 (3d Dist.) (holding that judgment was not a final appealable order when it failed to fully divide marital assets and liabilities).

{¶5} A review of the record in this case shows that Patricia is incorrect in claiming that the September 22, 2014, judgment entry was a final, appealable order from which Richard could have appealed. That entry specifically stated that it was not making a final determination as to all of the assets and the trial court retained jurisdiction to address those items at a later date. Thus, it was not a final, appealable order.

{¶6} However, on April 14, 2015, the parties entered an agreed entry which did address the outstanding items. The agreed entry specifically stated that it resolved all matters except for certain ones related solely to the motion to show cause.

**Based upon the Agreement of the parties, the Court hereby relinquishes jurisdiction to all matters, excepting its final ruling on the Motion of Defendant for sanctions, attorney's fees, and associated expenses relating to the Plaintiff's contempt in her failure to transfer parcels (b) and (c) at the February 24, 2015 closing. There shall be no reservation of jurisdiction by this Court of any matter, after the Court's ruling on that matter. The Court costs assessed to that Motion shall be addressed by the Court in its ruling on that Motion.**

Doc. 106 at ¶ 11.

{¶7} Contempt is generally defined as disobedience of a court order. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 2001-Ohio-15, 740 N.E.2d 265. Contempt proceedings are generally neither civil nor criminal. *Id*. However, most courts distinguish between civil and criminal based upon the purpose to be served by the sanction. *Id*. at 554. "Thus in determining whether a contempt is civil or criminal, the pertinent test is 'what does the court primarily seek to accomplish by imposing sentence?'". *Id.* at 554-55 (quoting *Shillitani v. United States* (1966), 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622). Civil contempt sanctions are designed as remedial or coercive and are used to compel obedience to a court order. *Shillitani, supra*. "It is well established that where the parties settle the underlying case that gave rise to the civil contempt sanction, the contempt proceeding is moot, since the case has come to an end." *Corn, supra* at 555. The trial court then loses jurisdiction to consider a civil contempt issue. *Id*. In contrast, criminal contempt sanctions are punitive in nature and are designed to vindicate the authority of the court. *Id*. If a contempt action is criminal or dual (both civil and criminal) in nature, the matter

may be collateral to the underlying claim and the trial court retains jurisdiction to rule upon the criminal contempt even after the underlying case is complete. *Id*. at 555-56.

{¶8} This rule of law has been applied in divorce cases where a party filed a motion for contempt in the divorce and appeals both. In *In re Ratliff*, the Tenth District Court of Appeals held that on an appeal from a divorce, the Court lacked jurisdiction to also address the contempt motion. *In re Ratliff*, 10th Dist. Franklin No. 04AP-803, 2005-Ohio-1301. Although the trial court had not ruled on the motion, the Court did not find that the motion was automatically denied by the final judgment of divorce. *Id*. Instead, the Court found that the contempt motion was collateral to the divorce and was still pending. *Id*.

{¶9} In *Bellamy v. Bellamy*, the Sixth District Court of Appeals received an appeal from a modification of child support as well as a motion to show cause for failure to pay child support. *Bellamy v. Bellamy*, 110 Ohio App.3d 576, 674 N.E.2d 1227 (6th Dist. 1996). The trial court dismissed the appeal as to the order vacating the prior support order on the grounds that it was a final appealable order and that the appellant had not filed her notice of appeal within 30 days. *Id*. at 580. However, the appellate court ruled that the motion to show cause was not subject to review because the trial court had not actually found a violation of a court order and there was no final appealable order from which to appeal. *Id*.

{¶10}  Here, the post-divorce issue of contempt was only based upon the transfer of the property as ordered in the September 2014 judgment entry and did not alter the property division or any other issue from the divorce in any way. That entry required Richard to provide notice to Patricia that he had obtained financing for the parcels. Doc. 72. Richard provided Patricia with the notice of which parcels he could finance and gave up his claim to the remaining parcels with the closing required to be completed before December 31, 2014. Doc. 114. Patricia then filed a 60(B) motion to alter the court's September order to require Richard to purchase all the property. *Id*. A hearing was held in January and Richard was able to show that he could not obtain financing for all of the parcels. *Id*. At the February 8, 2015 hearing, the trial court clearly informed the parties that Patricia was to deliver a quitclaim deed for parcels "b" and "c" as required in the divorce decree and Richard was required to provide payment. *Id*. The parties knew that the closing was set for February 24, 2015. *Id*. However, on February 20, 2015, Patricia notified Richard that she would not sign the quitclaim deed unless the check was directly from Richard and not from the title company. *Id*. The day before the closing, Patricia's attorney informed Richard that they would not be turning over the deed until he issued a personal check to Patricia and it cleared the bank, which was contrary to the trial court's order that the deed be transferred simultaneously as the check. *Id.* That same afternoon Richard's attorney notified Patricia's attorney that the title company would not issue the check without the deed and that Patricia's refusal to

turn over the deed was a violation of the court order. *Id.* Patricia, through her attorneys, refused to proceed with the closing unless her demands were met. *Id.* At the time of the scheduled closing, neither Patricia nor her attorney appeared to pick up the tendered check or to deliver the deed and the transfer did not occur. *Id.* Following this failure, Richard filed his motion to show cause on March 23, 2015. Doc. 99. On March 27, 2015, five days before the hearing on the motion was set to be held, Patricia's attorney sent the quitclaim deed, but again demanded a check from Richard's account and not one from the title company. Doc. 114. Although this motion for contempt may have been filed as one for civil contempt, the nature of it changed when the purpose changed from one of compelling compliance with the court orders to one of a more punitive nature. *See Corn, supra.* Patricia had already complied with the trial court's order to provide the quitclaim deed prior to the hearing. What was left for determination was the costs, attorney fees, and financial sanctions that would be paid for Patricia's failure to abide by the order of the trial court. The trial court noted in its ruling on the contempt motion that Patricia had disobeyed the trial court's orders and had done so unreasonably. *Id.* The trial court then went on to determine the consequential damages, financial sanctions, expenses, and attorney fees that would be assessed against Patricia for the contempt. *Id.* The trial court did not discuss any other matter related to the divorce as all of that, as noted by the trial court, had been resolved by the April 14, 2015, agreed entry. *Id.* Although, based upon the facts in this case, the divorce was final as of

the agreed entry in April, the trial court did not lose jurisdiction to consider the contempt motion because the motion had become more than just a civil contempt in nature, and was collateral to the underlying claim in this case.

{¶11} Since, in this case, the parties had resolved all outstanding issues as to the divorce by the agreed entry of April 14, 2015, the divorce was final as of that time.[1] The parties specifically agreed that the only remaining issue for the trial court was the contempt motion by the language of the agreed entry. Thus, there was no remaining issue from the divorce proceedings to be addressed. Additionally, the trial court recognized that the only outstanding issue as of August 2015, was the motion for contempt as that order only dealt with the question of sanctions and fees for the contempt of Patricia. The time for an appeal as to an issue with the property division ran as of May 14, 2015. The notice of appeal was not filed until September 24, 2015. The judgment entry from which Richard appeals dealt solely with the contempt issue. Thus, this court lacks the jurisdiction to review the merits of any issue arising from the divorce decree as the time for appeal had expired prior to the filing of the notice of appeal. *State v. Lovett,* 9th Dist. Summit No. 26779, 2013-Ohio-3515. Accordingly, the assignment of error is not well taken.

---

[1] Even if the appeal was timely filed, the April 14, 2015, agreed entry indicated that the parties had reached an agreement that resolved all matters in the divorce. A party may not attack a consent judgment in the absence of fraud or irregularity in the procurement of the judgment. *Cochenour v. Cochenour*, 4th Dist. Ross No 13CA3420, 2014-Ohio-3128, ¶ 29. Thus, the only issue not resolved by the consent of the parties was the amount of the sanction for the contempt action leaving only that issue subject to appellate review.

{¶12} Although the notice of appeal was not timely filed as to the divorce decree, it was timely filed as to the question of the ruling on the motion to show cause. However, Richard's motion was granted and he raises no assignment of error or argument as to that judgment. A review of the record reveals no errors with the trial court's ruling on the motion to show cause.[2]

{¶13} Having found no error prejudicial to the appellant, the judgment of the Court of Common Pleas of Hardin County is affirmed.

*Judgment Affirmed*

**PRESTON and ROGERS J.J., concur in Judgment Only.**

---

[2] The issue of outstanding attorney fees in regards to the contempt motion was determined by the trial court in the order on plaintiff's contempt filed on August 28, 2015.