[Cite as *Geary v. Geary*, 2015-Ohio-259.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| JANELLE GEARY | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| First Petitioner-Appellant | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 14CAF050033 |
| SHAWN GEARY | : |  |
|  | : |  |
| Second Petitioner-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil appeal from the Delaware County
                             Court of Common Pleas, Domestic
                             Relations Division,  Case No. 10 DS C 03
                             0136

JUDGMENT:                    Affirmed in part; Reversed and Remanded
                             in part

DATE OF JUDGMENT ENTRY:      January 16, 2015

APPEARANCES:

For First Petitioner-Appellant      For Second Petitioner-Appellee

LISA MEIER                          ROBERT OWENS
ANTHONY GRECO                       46 North Sandusky St., Ste. 202
6810 Caine Road                     Delaware, OH  43015
Columbus, OH  43235

*Gwin, J.*

{¶1} Appellant appeals the April 17, 2014 judgment entries of the Delaware County Common Pleas Court, Domestic Relations Division.

*Facts & Procedural History*

{¶2} In May of 2010, appellant Janelle Geary and appellee Shawn Geary filed a separation agreement, agreed judgment entry, and decree of dissolution that established the responsibilities of the parties, including child support and visitation. The parties have three children, S.G., born on June 13, 1992, J.G., born on June 27, 1997, and J.G., born on May 20, 1999. In the separation agreement, the parties provided for specific parenting time with appellee. In July of 2010, appellant filed a motion for modification and reallocation of parental rights and responsibilities. In August of 2010, appellee filed a motion for reallocation of parental rights and responsibilities. Appellee also filed a motion for contempt against appellant alleging she moved without informing appellee. In August of 2010, Pamela Lammon ("Lammon") was appointed as guardian ad litem ("GAL") in the case. Appellant filed a motion for contempt in February of 2011.

{¶3} Lammon filed her first report in February of 2011. She recommended appellant remain as the residential parent, expanded visitation for appellee, and an order from the trial court that Toby Caudill ("Caudill"), appellant's ex-fiancée, could have no contact with the children. In April of 2011, Lammon filed an update to her report and indicated she wished to speak with the children, but neither parent would bring them to her office.

{¶4} While the motions were pending in this case, appellant filed a petition for civil protection order ("CPO") against appellee in Perry County on April 25, 2011, and

listed the children as "protected parties" on the petition. The magistrate in Perry County initially granted the CPO against appellee; however, after appellee filed objections to the decision, the trial court in Perry County vacated the CPO against appellee in February of 2013. The magistrate in the instant case held a hearing on the parties' motions to modify on April 27, 2011, but appellant did not inform the magistrate of the pending CPO petition.

{¶5} On May 2, 2011, the magistrate issued a decision denying appellee's motion for modification, granting appellee extended visitation, denying appellant's motion for contempt in part with regards to the failure to pay federal taxes, and granting appellant's motion for contempt in part with regards to the failure of appellee to pay Ohio state taxes or set up a payment plan. The magistrate also ordered that Caudill was to have no contact with the minor children. Neither party objected to the magistrate's decision and the trial court approved and adopted the decision on June 9, 2011. On June 6, 2011, appellee filed a motion for emergency change of custody. On June 21, 2011, Lammon filed a Second Update to her GAL Report. In her update, Lammon stated that appellant did not tell Lammon or the magistrate about the CPO she filed against appellee that listed the children as protected parties. Further, that this is the "strongest case of parental alienation" Lammon has seen in nineteen years of practice as appellant will not follow court orders and is less than truthful. On June 29, 2011, the magistrate denied appellee's motion for change of custody, finding no change of circumstances. The trial court approved and adopted the magistrate's decision on July 21, 2011, as no objections were filed by either party. Appellant filed a motion to terminate Lammon as the GAL in August of 2011, which was denied by the trial court.

{¶6}   On March 26, 2012, appellee filed a motion for reallocation of parental rights and responsibilities and motion to reappoint GAL.  On April 24, 2012, appellee filed a motion for modification of child support to reduce the amount of child support due to the fact that S.G. was no longer enrolled in college on a part-time or full-time basis.  On May 14, 2012, appellant filed a second petition for civil protection order in Perry County which contained allegations of phone and text threats from appellee.  The Perry County magistrate granted the CPO against appellee until May 14, 2013.  However, on August 23, 2012, appellant dismissed the action against appellee.  As a result of appellant's allegations in the CPO petition, criminal charges were filed against appellee.  To defend appellee against the criminal charges, appellee hired a communications expert.  In the expert's report, the cell tower data contradicted appellant's assertion that she received threats on May 8, 2012 in Perry County.  Accordingly, the criminal charges against appellee were dismissed.

{¶7}   On June 15, 2012, appellee filed a motion for emergency change of custody.  Appellant filed a motion to dismiss appellee's motion for emergency change of custody or continue the matter until the CPO was concluded.  On August 8, 2012, the magistrate denied appellee's motion for emergency relief, and also denied appellant's motion to dismiss.  In October of 2012, the trial court appointed Louis Herzog ("Herzog") as GAL.

{¶8}   On June 7, 2013, appellee filed a motion to show cause and for contempt against appellant.  Appellee included three prongs to his contempt motion: (1) appellant failed to comply with regard to her duty to report when S.G. was no longer continuously enrolled in college; (2) appellant failed to comply with the order of May 2, 2011 as she

willfully interfered with appellee's visitation and caused parental alienation; and (3) appellant failed to comply with the May 2, 2011 order that prohibited contact between Caudill and the children. On August 29, 2013, appellant filed a motion for in-camera interview of the children. On September 20, 2013, appellant filed a motion to show cause against appellee for the failure to pay back federal taxes.

{¶9} The trial court held a hearing on August 30, 2013. Lammon testified that she personally attended the CPO hearing in Perry County and observed the child testify against appellee. Lammon confirmed her report that, based upon her investigation and observations including talking to the children, talking to both parents, and home visits, this is the strongest case of parental alienation she has seen in 19 years. Lammon stated that she has not been involved in the case since 2011.

{¶10} Attorney Carrie Varner ("Varner") testified as to the reasonableness and necessity of appellee's attorney fees. Ezekiel Keesbury ("Keesbury"), a case manager at Delaware County Child Support Enforcement Agency, testified that appellant did not inform the agency that S.G. withdrew from college in 2011. However, the agency received documentation from appellee in April of 2013 that S.G. withdrew from college in 2011.

{¶11} Appellant testified that, at the May 2, 2011 hearing, she did not tell the magistrate or the GAL she had filed a CPO against appellee on April 25. Appellant stated she never notified child support that S.G. was no longer in college. However, she was under the impression that child support knew he was no longer in college. Appellant testified on direct examination that the allegations in the CPO petition she filed against appellee were true and accurate. However, on cross-examination,

appellant testified that she lied under oath as she was in Reynoldsburg, Ohio on May 8, 2012, when in previous sworn testimony and in the CPO petition, she testified she was in Perry County at that date and time. Appellant stated she lied to protect herself and her children. Appellant testified that she was very concerned about appellee visiting the children because of previous incidents he was involved in. However, appellant could not explain why this was never mentioned by the children in interviews with the GAL or the magistrate.

{¶12} Appellee testified that the criminal charges filed against him in Perry County were dismissed after he obtained an expert report regarding appellant's cell phone activity. Appellee stated he filed numerous motions to receive visitation with the children and his attorney sent certified letters to appellant and her attorney requesting visitation. Appellee never called the children or sent them cards or gifts because he was afraid he would be in violation of the CPO order and he would be arrested.

{¶13} The trial court continued the hearing until October 11, 2013. At the October 11th hearing, appellant testified that when she filed her personal tax return for 2012, her refund was applied to back taxes from the 2007 year in the amount of $4,225.11. Appellee testified that he made a payment arrangement with the IRS in 2010 and monthly payments of $250 - $260 per month are automatically deducted from his checking account. Further, that when he contacted the IRS, he was informed that he owed nothing for 2005, 2006, or 2007. Appellee does not know why the IRS took a portion of appellant's refund as his payment plan is still in place and he received no notice that the IRS was retaining any of appellant's funds.

{¶14} On April 17, 2014, the trial court issued multiple judgment entries. In the judgment entry on appellant's motion for contempt against appellee for back taxes, the trial court denied the motion and found no clear and convincing evidence of contempt by appellee with regards to paying federal back taxes. In the judgment entry on attorney fees, the trial court noted that though appellee was seeking $91,323.79 in attorney fees, some of the acts appellee requested fees for were collateral in nature and not related to the contempt charge. The trial court awarded appellee $2,850 in attorney fees for the first prong of appellee's contempt motion, $17,500 in attorney fees for the second prong of appellee's contempt motion, and $1,450 in attorney fees for the third prong of appellee's contempt motion. The trial court denied appellant's motion for in-camera interview of the children, finding that appellant alienated the children so much that an interview would have no value and would not assist the trial court in a determination as to appellant's potential contempt.

{¶15} The trial court found appellant in contempt with regards to the first prong of appellee's motion for contempt and awarded appellee attorney fees. The trial court found appellant's testimony regarding notifying CSEA of S.G.'s withdrawal from college was not credible and that appellee demonstrated, by clear and convincing evidence, that appellant willfully failed to notify CSEA that S.G. withdrew from college. The trial court sentenced appellant to thirty days in jail and a fine of $250. However, the jail sentence was suspended upon appellant's compliance with a payment plan.

{¶16} The trial court also found appellant in both civil and criminal contempt with regards to the second prong of appellee's motion for contempt and awarded appellee attorney fees. The trial court found that, as a result of appellant's actions, appellee had

no meaningful parenting time with the children since 2011.  The trial court found that the overall testimony of appellant established serious doubt upon her character because when she was confronted with discrepancies, her efforts to explain her actions undermined her credibility so badly that her testimony was worthless.  The trial court stated appellant lied under oath in an effort to prohibit appellee from having parenting time with the children.  Further, that appellant willfully and purposely interfered with appellee's visitation and also alienated the children towards appellee.  The trial court sentenced appellant to thirty days (30) in jail and $250 for the criminal contempt.

{¶17}  With regards to the third prong of appellee's motion for contempt, the trial court found that while appellee presented compelling evidence with respect to Caudill having contact with the children after 2011 and has shown by a preponderance of the evidence that appellant was negligent in creating violations, there is not clear and convincing evidence of the children's contact with Caudill.  However, in light of the overall circumstances, the trial court assessed attorney fees to appellant.

{¶18}  The trial court also issued a judgment entry with regards to child support. The trial court found appellant went to such lengths to alienate the children from appellee that it would be inappropriate for appellee to continue to pay child support. The trial court terminated appellee's child support obligation effective June 11, 2013 and eliminated any existing arrearage of appellee.

{¶19} Appellant appeals the April 17, 2014 judgment entries and assigns the following as error:

{¶20} "I. THE COURT ERRED AS A MATTER OF LAW WHEN IT PERMANENTLY TERMINATED APPELLEE-FATHER'S CHILD SUPPORT OBLIGATION.

{¶21} "II. THE TRIAL COURT LACKED SUFFICIENT EVIDENCE TO FIND APPELLANT-MOTHER IN CONTEMPT.

{¶22} "III. THE COURT ERRED BY HOLDING APPELLANT-MOTHER IN CRIMINAL CONTEMPT.

{¶23} "IV. THE COURT DENIED APPELLANT-MOTHER HER DUE PROCESS RIGHT TO RECEIVE ADEQUATE NOTICE OF THE CONTEMPT CHARGES AGAINST HER AND HER RIGHT TO CALL WITNESSES, AND ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FINDING TWO CHARGES OF CONTEMPT AND SENTENCING HER SEPARATELY FOR EACH WHEN THERE WAS ONLY ONE MOTION PENDING.

{¶24} "V. APPELLEE-FATHER WAS BARRED BY COLLATERAL ESTOPPEL FROM RE-LITIGATING THE CIVIL PROTECTION ORDERS ISSUED BY A DIFFERENT COUNTY COURT.

{¶25} "VI. THE COURT ERRED AS A MATTER OF LAW BY ADMITTING AND CONSIDERING EVIDENCE CONCERNING ALIENATION IN DETERMINING APPELLANT-MOTHER COMMITTED CONTEMPT.

{¶26} "VII. THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING FORMER GAL TO TESTIFY AS TO HEARSAY, MATERIALLY PREJUDICING APPELLANT-MOTHER AS THE COURT RELIED ON SAID TESTIMONY.

{¶27} "VIII. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ASSIGNING AND DETERMINING THE ATTORNEY FEES AWARD.

{¶28} "IX. THE COURT ERRED AND ABUSED ITS DISCRETION BY NOT FINDING APPELLEE-FATHER IN CONTEMPT FOR REPAYMENT OF IRS FEES."

I.

{¶29} In her first assignment of error, appellant argues the trial court erred as a matter of law when it terminated appellee's child support obligation. Appellant argues R.C. 3109.05(D) prohibits such termination when the custodial parent denies or interferes with the noncustodial parent's parenting time.

{¶30} Appellant is correct in her assertion that child support and parenting time are separate issues. *Davis v. Davis*, 55 Ohio App.3d 196, 563 N.E.2d 320 (8th Dist. 1998); *Spencer v. Gatten*, 8th Dist. Cuyahoga No. 89398, 2007-Ohio-4071. However, that does not mean the trial court could not modify or terminate the child support obligations of appellee if the court determines a modification or termination is warranted pursuant to the statutory requirements contained in R.C. 3119.79 or R.C. 3119.88.

{¶31} The issue in this case is whether the parties had adequate notice of the issue of child support modification as to J.G. and J.G. "Regardless of the means by which the issue of modification is brought before the court, due process requires that the defending party receive adequate notice of the motion and the opportunity to present evidence in opposition." *Bellamy v. Bellamy*, 110 Ohio App.3d 576, 674 N.E.2d 1227 (6th Dist. 1996). In this case, appellee filed a motion for modification of child support in April of 2012 that was still pending at the time of the 2013 hearing. However, this motion requested a modification as to the oldest child, S.G. only, and made no

mention of a modification for the other two children. Further, the notice of hearing issued by the trial court on July 11, 2013, stated the hearing would concern appellant's alleged contempt. There is nothing in the record to reflect that any party had notice that the hearing would be concerned with a proposal to modify or terminate child support as to the two minor children.

{¶32} The trial court's sua sponte modification of child support as to J.G. and J.G. fails to meet the due process requirements of notice and opportunity to defend as no motion for modification or termination as to J.G. and J.G., either written or verbal, was before the trial court. See Civ.R. 75(I); *McNeeley v. Ortiz*, 5th Dist. Stark No. 2010-CA-00012, 2010-Ohio-4650. Appellant's first assignment of error is sustained.

## II., III., IV.

{¶33} In her next three assignments of error, appellant argues the trial court erred in finding appellant in civil and criminal contempt. An appellate court's standard of review of a trial court's finding of contempt is abuse of discretion. *State ex. rel. Celebreeze v. Gibbs*, 60 Ohio St.3d 69, 573 N.E.2d 62 (1991).

### Civil Contempt

{¶34} The burden of proof for civil contempt is clear and convincing evidence. *Flowers v. Flowers*, 10th Dist. No. 10AP-1176, 2011-Ohio-5972. The determination of clear and convincing evidence is within the discretion of the trier of fact. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). We will not disturb the trial court's decision as against the manifest weight of the evidence if the

decision is supported by some competent, credible, evidence supporting the movant's burden of proof. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972.

**{¶35}** The purpose of civil contempt is to render punishment that is remedial or coercive and for the benefit of the complainant. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 416 N.E.2d 610 (1980). Normally, contempt proceedings in domestic relations cases are indirect and civil in nature because their purpose is to coerce or encourage future compliance with the court's orders and their concern of behavior that occurs outside the presence of the court. *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972.

*First Prong of Contempt Motion – Civil Contempt*

**{¶36}** Appellant argues the trial court lack sufficient evidence to find appellant in civil contempt with regards to failing to notify CSEA that S.G. had withdrawn from college, which was a reason for terminating support for him per the terms of the separation agreement.

**{¶37}** Article D of the parties' separation agreement, which was attached to and incorporated into the decree of dissolution, states that "child support shall continue [after emancipation] as long as the child(ren) continuously attend(s), on a full time or part time basis any recognized college or school." Appellant does not challenge the trial court's

finding that she willfully failed to make this notification. Instead, appellant claims the trial court erred in finding her in contempt because she had no legal duty to notify CSEA of S.G.'s withdrawal from college.

{¶38} We first note that appellant failed to raise the issue of her legal duty to notify before the trial court and instead argued substantial notification or compliance with the notice requirements since the CSEA retroactively adjusted the child support obligation with regards to S.G. "It is well established that a party cannot raise new issues or legal theories for the first time on appeal." *Dolan v. Dolan*, 11th Dist. Nos. 2000-T-0154 and 2001-T-0003, 2002-Ohio-2440, citing *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 322 N.E.2d 629 (1975). Failure to raise this issue before the trial court operates as a waiver of appellant's right to assert such for the first time on appeal. *State ex. rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 611 N.E.2d 830 (1993).

{¶39} However, even if we consider appellant's argument, we find that appellant was under a statutory duty to notify the CSEA of S.G.'s withdrawal from school. R.C. 3119.87 requires:

> the parent who is the residential parent and legal custodian of a child for whom a support order is issued or the person who otherwise has custody of a child for which a child support order is issued immediately shall notify * * * the child support enforcement agency administering the child support order of any reason for which the child support order should terminate. With respect to a court child support order, a willful failure to notify the child support enforcement agency as required by this division is contempt of court.

{¶40} Under the decree, S.G.'s withdrawal from school was a reason to terminate the child support order. Appellant listed S.G. as a protected person in her CPO petition in both April of 2011 and May of 2012 as he was residing with her. Further, on the CPO petition in May of 2012, appellant provided that the two minor children lived with S.G. and appellant at the address listed on the CPO petition from August 2010 – present (May 14, 2012). Thus, appellant was S.G.'s residential parent having care, custody, and control of S.G. until at least May of 2012 and had the statutory duty to notify CSEA of any reason for which the child support order should terminate. Appellant admitted in her request for admission that S.G. had not been continuously enrolled in college since he left Hocking College on February 8, 2011 and the CSEA case manager testified that the case file indicated no contact from either party about S.G. quitting school until the agency received information from appellee in April of 2013 that S.G. quit school in February of 2011. Accordingly, the trial court did not err in finding appellant in civil contempt with regards to the first prong of appellee's motion.

*Second Prong of the Contempt Motion – Civil Contempt*

{¶41} The trial court found appellant in civil contempt for the deliberate and willful of deprivation of parenting time. Appellant contends the trial court erred in finding her in civil contempt for interference with parental rights because there is insufficient evidence in the record to demonstrate that she was in contempt of the trial court's orders. According to appellant, appellee's lack of parenting time occurred because he chose not to exercise visitation, not because appellant interfered with it. In support of

her argument, appellant points to appellee's testimony that he made no attempt to call his children, did not send them cards, and did not send them gifts.

{¶42}  However, appellee testified that, due to the CPO's being filed by appellant, he did not contact the children because the CPO had been granted against him and he was afraid that he would be arrested for violating the order if he attempted contact. Appellee stated he went through the legal channels he knew of to gain visitation, including filing two motions for change in custody and having his attorney send letters to appellant's counsel and the GAL requesting visitation.  The trial court found appellant's conflicting statements "undermined her credibility so badly that much, if not nearly all, of her testimony is essentially worthless" and that "in her effort to prohibit the Father any parenting times or any meaningful relationship with the children, she has abused both the civil protection statutes and the criminal states by perpetrating a fraud on the courts by lying under oath without any impunity."  Given the trial court's characterization of appellant's behavior, it is clear that the court did not find appellant to be credible in her assertion that she complied with the visitation schedule as set forth in the magistrate's decision of May 2, 2011 and approved by the trial court on June 9, 2011.  The trial court is in the best position to determine the credibility of the witnesses and there is nothing to indicate the trial court erred in its credibility determination in this case.  In view of the conflicting testimony and the trial court's credibility determination, the trial court's civil contempt finding with respect to the second prong of appellee's motion for contempt is not against the manifest weight of the evidence.

*Second Prong of the Contempt Motion - Criminal Contempt*

{¶43} In addition to finding appellant in civil contempt on the second prong of appellee's motion for contempt, the trial court also found appellant in criminal contempt with regards to the second prong of appellee's motion for contempt. Appellant argues the trial court erred in finding her in criminal contempt because the proceeding instituted was civil in nature, because she did not receive adequate notice of the contempt charges, and could not call witnesses on her own behalf. Appellee argues the trial court found appellant in criminal contempt not for the denial of parenting time, but for lying under oath. Appellee contends that lying under oath constitutes direct contempt and summary punishment was appropriate. Thus, due process did not require that appellant be given the opportunity to present witnesses or notice of the pending criminal sanction.

{¶44} The burden of proof for criminal contempt is proof beyond a reasonable doubt. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 416 N.E.2d 610 (1980). The purpose of criminal sanctions is to vindicate the authority of the court and punish past acts of disobedience and thus penalties for criminal contempt are unconditional and "may take the shape of an absolute fine for a specific amount or a determinate period of confinement." *Id.*

{¶45} Direct contempt occurs in the presence of the court and obstructs the administration of justice. R.C. 2705.01. "Since direct contempt interferes with the judicial process, the court may summarily deal with it in order to secure the uninterrupted and unimpeded administration of justice." *Sansom v. Sansom*, 10th Dist. Franklin No. 05AP-645, 2006-Ohio-3909. To justify the imposition of a summary contempt, the act must pose a threat that requires immediate sanction to preserve the

dignity and authority of the court and designed to fill "the need for immediate penal vindication of the dignity of the court." *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). The rule that a court may summarily find one in contempt is to be applied cautiously because the accused is not afforded the due process protections ordinarily afforded a criminal defendant. *In re Lodico*, 5th Dist. Stark No. 2003-CA-00446, 2005-Ohio-172. Further, a summary proceeding is not authorized simply because the conduct constitutes a direct contempt and even if the facts are clear because they took place in the presence of a judge, the effect of the contemptuous conduct must create a "need for speed" to immediately suppress the court-disrupting misbehavior and restore order to the proceeding. *Id.* Absent that need, an evidentiary hearing is required even though the contempt is direct. *Id.*

{¶46} We first note that the trial court's judgment entry regarding the criminal contempt does not specifically indicate, as appellee suggests, that appellant was found in criminal contempt for lying under oath. While the trial court states, in its findings of fact, that appellant lied under oath, it is not clear in the judgment entry that this was the basis for the finding of criminal contempt. Further, even if the trial court's finding that appellant lied under oath is the basis for the criminal contempt, the actions in the case at bar do not rise to the level of a serious threat to orderly proceedings. Although appellant's conduct of lying under oath was arguably improper, it did not pose an imminent threat to the administration of justice sufficient to warrant the imposition of summary punishment without notice, a hearing, and the opportunity for appellant to present witnesses on her behalf as it relates to the criminal contempt charge. There was no "need for speed" to immediately suppress the behavior or restore order to the

proceeding, as evidenced by the fact that the trial court did not find appellant in criminal contempt during the contempt hearing. While the absence of this "imminent threat" does not preclude the finding of criminal direct contempt, it does preclude the imposition of summary punishment without notice and an evidentiary hearing on the charge. We find the trial court erred in summarily imposing criminal contempt sanctions on appellant without notice and a hearing.

{¶47} Based on the foregoing, appellant's second, third, and fourth assignments of errors are sustained in part and overruled in part. The trial court did not err in finding appellant in civil contempt for the first and second prongs of appellee's motion for contempt. However, the trial court erred in summarily punishing appellant for criminal contempt without notice and an opportunity for a hearing.

V.

{¶48} Appellant argues that the trial court erred as collateral estoppel prevents the re-litigating of the civil protection orders by the Perry County court.

{¶49} Collateral estoppel precludes re-litigation of any "issue that has been actually and necessarily litigated and determined in a prior action." *Fort Frye Teachers Assn v. State Emp. Rels. Bd.*, 81 Ohio St.3d 392, 395 692 N.E.2d 140 (1998). In order for collateral estoppel to apply, it must be shown that the fact or issue "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *New Winchester Gardens, Ltd. v. Franklin Co. Bd. of Revision*, 80 Ohio St.3d 36, 1997-Ohio-360, 684 N.E.2d 312.

{¶50} In this case, we find the civil protection orders were not "re-litigated" in this action.  Appellee's motion for contempt claimed that appellant violated his parental rights.  Pertinent to this claim was the fact that appellant filed two civil protection orders that included the children and that appellant admitted she was lying with regards to at least some of the underlying facts from the civil protection order.  The facts surrounding the civil protection orders that included the children and their termination are relevant and probative on the issues in this case as appellant herself continued to assert, as a defense to the motion for contempt, the existence of the civil protection orders.  Further, evidence of appellant's truthfulness in previous court proceedings is probative and relevant to her credibility in this case.  The fact or issue as to appellant's contempt of court for violating appellee's parental rights was not actually and directly litigated in the prior civil protection order proceedings.  Accordingly, collateral estoppel does not apply. Appellant's fifth assignment of error is overruled.

VI.

{¶51} In her sixth assignment of error, appellant argues the trial court erred by admitting and considering evidence on parental alienation because the word "alienation" is not included in R.C. 2705.031(B), the statute which authorizes a party to file a contempt motion for the failure to pay support, failure to comply with visitation order, or interference with visitation order.  R.C. 2705.031(B)(2) provides that, "Any parent who is granted parenting time rights under a parenting time order or decree  * * * any person who is granted visitation rights under a visitation order or decree * * * may initiate a contempt action for a failure to comply with, or an interference with, the order or decree."

**{¶52}** In this case, appellee filed a motion for contempt alleging "persistent denial of and willful interference with father's visitation and parental alienation for two years." The trial court found appellant in contempt for willfully and purposely denying parenting times, which is sufficient to cite appellant for contempt pursuant to R.C. 2705.031(B)(2). The trial court made an additional finding that appellant willfully and purposely alienated the children towards appellee. This additional finding does not alter the finding of contempt for willfully and purposely denying parenting time and is not improper simply because R.C. 2705.031(B)(2) does not include the word "alienation." See, e.g. *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176. Appellant's sixth assignment of error is overruled.

VII.

**{¶53}** Appellant argues the trial court abused its discretion by allowing Lammon to testify as to hearsay. Appellant contends Lammon's statements contained in her reports are hearsay because she has had no contact with the children since 2011 and were thus not based on personal knowledge. Further, that Lammon's testimony regarding the children's presence and testimony at the CPO hearing was impermissible hearsay.

**{¶54}** Evidentiary rulings lie within the broad discretion of the trial court. Such rulings will not be reversed on appeal absent an abuse of discretion which amounts to prejudicial error. *State v. Lundy*, 41 Ohio App.3d 163, 535 N.E.2d 664 (1st Dist. 1987). An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶55}** Hearsay is an out-of-court statement offered for the truth of the matter asserted and is generally not admissible at trial. Evid.R. 801(C). A statement is not hearsay when offered for a purpose other than to prove the truth of the matter asserted. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588.

**{¶56}** Appellant argues that Lammon's entire testimony was hearsay as it lacked personal knowledge because she had no contact with the children, appellant, or appellee since 2011 and her statements were based upon her previous report to the court. We disagree. Lammon testified that although her duties as GAL in the case ended in June of 2011, she remained as GAL until all outstanding motions were resolved in February of 2012. Lammon testified concerning her report and her supplemental reports to the court that she authored throughout the case. Lammon explained her conclusions were based upon her investigation over the course of the case, including talking with the children, talking with their counselor, reviewing criminal and civil records, attending depositions, talking with the prosecuting attorney, conducting home visits with each parent, and talking to the extended family members of each parent. Ohio courts have defined "personal knowledge" as "knowledge gained through firsthand observation or experience, as distinguished from a belief based upon what someone else has said." *Zeedyk v. Agricultural Soc. of Defiance Cty.,* 3rd Dist. Defiance No. 4–04–08, 2004–Ohio–6187, quoting *Bonacorsi v. Wheeling & Lake Erie Railway Co.*, 95 Ohio St.3d 314, 320, 767 N.E.2d (2002); Black's Law Dictionary (7th Ed. Rev.1999) 875. Lammon's testimony, reports, and supplemental reports were gained through her firsthand observation and experience, not from a belief based upon

what someone else said. Accordingly, her testimony was based upon personal knowledge.

{¶57} Appellant also argues Lammon's testimony regarding the testimony of the children at the hearing on the civil protection order petition in Perry County was inadmissible hearsay. We disagree. When Lammon testified regarding her finding that appellant interfered with appellee's parental rights, one of the bases for this finding was that, prior to the CPO hearing, one child stated that she witnessed appellant engaging in improper sexual conduct, but that at the CPO hearing a different child testified she witnessed that conduct. "Given the guardian's role and the requirements that she explain her investigation and the basis for her recommendation, her report and testimony may necessarily include information about what other people told her." *Sypherd v. Sypherd*, 9th Dist. Summit No. 25815, 2012-Ohio-2615. These "out-of-court statements do not become inadmissible 'hearsay,' however, unless they are offered in evidence to prove the truth of the matter asserted * * * an out-of-court statement offered simply to prove that the statement was made is not hearsay." *Id.* In this case, Lammon's statements regarding the previous testimony of the child were not presented to prove the truth of what the child testified about, but were offered simply to prove that the statement was made and her conclusion that the children flip-flopped their story was relevant to her recommendations and findings.

{¶58} Appellant finally argues Lammon was not qualified as an expert and thus could not testify regarding parental alienation. We first note that appellant failed to object to counsel for appellee's question to Lammon regarding her opinion of appellant. Further, "the trial court, as the fact finder, is free to believe, all, part, or none of the

testimony of each witness." *Hrabovsky v. Axley*, 5th Dist. Stark No. 2013CA00156, 2014-Ohio-1168. The testimony of Lammon alone did not establish parental alienation. The trial court specifically noted it was making a finding of parental alienation based on the "totality of the evidence," including the testimony of appellant and appellee.

{¶59} Moreover, even assuming, arguendo, that her statements were improperly admitted hearsay, their admission was harmless error. Pursuant to Criminal Rule 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." With regards to the CPO issue, although the trial court's judgment entry notes that it found Lammon attended the full hearing on the CPO and listened to testimony, the trial court did not make any express findings about the statements made at that hearing by parties that did not testify in this action. See *State v. Sorrels*, 71 Ohio App.3d 162, 593 N.E.2d 313 (1st Dist. 1991). Further, the trial court based its finding of contempt regarding visitation on the totality of the evidence, including the testimony of appellant, the testimony of appellee, and the documents submitted into evidence, not simply the testimony of Lammon. The trial court placed particular emphasis on the testimony of appellant with her conflicting statements and her admission that she lied under oath. Accordingly, assuming arguendo the testimony of Lammon was improperly admitted, this error does not affect appellant's substantial rights. Appellant's seventh assignment of error is overruled.

VIII.

{¶60} Appellant contends the trial court erred and abused its discretion in assigning and determining the attorney fees award. Appellant argues that attorney fees cannot be assessed for the third prong of appellee's contempt motion since the trial

court did not find appellant in contempt on that charge, that parental alienation is not a valid basis for finding appellant in contempt and thus the attorney fees associated with such finding are inappropriate, and that attorney fees awarded extend beyond the contempt actions.

{¶61} "An award of attorney's fees in a domestic relations action is committed to the sound discretion of the trial court." *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP1176, 2011-Ohio-5972. This Court will not reverse an award of attorney fees absent a finding that the trial court abused its discretion. *Id.*

{¶62} Appellant contends that since parental alienation is not an appropriate basis for a finding of contempt, the trial court cannot assess attorney fees for the second prong of appellee's contempt motion. We disagree. As discussed above, in finding appellant in contempt, the trial court made a contempt finding based upon the denial of parenting time and then made an additional finding on parental alienation. In assessing attorney fees for the civil contempt regarding the denial of parenting time, the trial court stated there was "extensive discovery and preparation to prove the Mother's intent to purposely violate court orders with respect to Father's parenting times." The trial court then made an additional finding with respect to parental alienation. This additional finding does not alter the finding of contempt for willfully and purposely denying parenting time and is not improper simply because R.C. 2705.031(B)(2) does not include the word "alienation." See, e.g. *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972. R.C. 3109.051(K) requires that a trial court award contempt-related costs and reasonable attorney's fees if it finds a party in contempt. The trial court properly awarded appellee attorney fees with regard to the denial of

parenting time pursuant to this statute. Further, our reversal of the criminal contempt finding and sanctions against appellant do not alter the award of attorney fees with regards to the second prong of appellee's contempt motion, as the trial court also found appellant in civil contempt for appellant's denial of appellee's parenting times and can properly assess attorney fees based on that civil contempt finding.

{¶63} Appellant argues the trial court erred in awarding attorney fees on the third prong of appellee's motion when the trial court did not find appellant in contempt for that prong. We disagree. R.C. 3105.73(B) provides as follows:

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution * * * the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

{¶64} This case is a post-decree action that arises from a dissolution, thus, R.C. 3105.73 applies. In this case, although the judgment does not include an express finding that the award of attorney fees and costs with regards to the third prong of the motion for contempt was equitable, it indicates that the trial court relied on equitable considerations in the award of attorney fees. The trial court's decision specifically cites appellant's conduct in awarding appellee attorney fees, as allowed for in R.C. 3105.73(B). Although the trial court found appellee had not met the clear and convincing burden of proof on this third claim, the trial court did find appellee had shown

that fact by a preponderance of the evidence. The trial court found an award of attorney's fees on the third claim was appropriate given the totality of the circumstances and the conduct of appellant. Therefore, the trial court did not abuse its discretion in finding the award of attorney's fees for the third prong of the contempt motion was equitable.

{¶65} Appellant finally argues the trial court erred in awarding attorney fees beyond the scope of the contempt action. We disagree. In this case, appellee asked for attorney's fees in excess of $90,000 and specifically requested attorney's fees for actions collateral to the contempt motion, including fees for appellee's defense against the civil protection orders ($58,481.37) and fees for the defense of appellee against the criminal charges in Fairfield and Perry counties as a result of reports by appellant ($8,257.50). Appellee requested $24,584.92 in attorney fees for post decree actions in the instant case. Appellee argued the entire amount was necessary to establish appellant's course of conduct of committing acts in violation of the trial court's orders concerning parenting times for appellee. However, the trial court determined that the attorney fees for the other cases were collateral and in nature and cannot be assessed as an award of attorney fees with respect to the contempt charges.

{¶66} The trial court then examined the exhibits and billing statements in support of the request for attorney fees and, together with the testimony of the expert witness, determined the charges that could be reasonably associated with pursuing evidence in support of the three contempt charges totaled $21,800. On the first prong of the motion for contempt, the trial court found that appellee had to expend attorney fees to obtain evidence of the withdrawal from one college and non-attendance records at a second

college. On the second prong of the motion for contempt, the trial court determined that in order for appellee to gather the necessary evidence to establish the willful effort to deny parenting time appellee had to conduct a large discovery effort. Further, the trial court specifically stated on the second prong that the fees assessed were only those fees closely associated with the contempt charge. Thus, any fees that pre-dated the motion for contempt were those the trial court found specifically were necessary for appellee to meet his burden with regards to the motion for contempt. Accordingly, the trial court did not abuse its discretion in awarding appellee $21,800 in attorney fees for the post-decree motion for contempt.

{¶67} Appellant's eighth assignment of error is overruled.

IX.

{¶68} Appellant argues the trial court erred and abused its discretion by determining appellee was not in contempt for the failure to repay IRS fees. The separation agreement dated March 12, 2010 provides that, "any and all back taxes up to this date will be paid by husband."

{¶69} Appellant testified that when she filed her personal tax return for 2012, a portion of her 2012 tax refund ($4,225.11) was retained by the IRS for liabilities incurred in 2007. Appellant asked the court to find appellee in contempt for failing to pay the 2007 taxes as required by the separation agreement.

{¶70} Appellee testified that he established a repayment plan with the IRS in 2010 and is currently making monthly payments of approximately $250 per month to the IRS that are automatically deducted from his checking accounts. Appellee presented bank records showing automatic withdrawals from the IRS starting in January of 2011.

Appellee stated the information he received from the IRS was that he had a zero balance for 2005, 2006, and 2007.  Appellee testified that he has no idea why the IRS took appellant's refund as his payment agreement with the IRS rolls all of the previous years back taxes into one account and he pays one lump sum payment on that agreement every month until it is paid off.  Further, that his repayment agreement was supposed to stop all collection efforts by the IRS.  Appellee testified that there has been no indication from the IRS that they were no longer going to accept his repayment plan and the IRS continues to process his payments each month.

{¶71} The trial court found that appellant failed to prove that appellee was not in compliance with the separation agreement.  We find the trial court did not abuse its discretion in this determination as the IRS' seizure of the funds was not the result of noncompliance with the decree by appellee.  Appellee testified that he entered into a repayment program with the IRS to pay the 2007 tax liability and he presented bank records showing monthly automatic drafts from his account to make the required payments.  Appellee testified that his repayment agreement was supposed to stop collection efforts by the IRS, that the IRS is still taking money each month from his bank account, and that he had no indication from the IRS that they were no longer going to accept the repayment plan they established with him.  As noted above, the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).  Appellant's ninth assignment of error is overruled.

{¶72} Based on the foregoing, we overrule appellant's assignments of error V, VI, VII, VIII, and IX.  Further, we sustain appellant's assignments of error II, III, and IV

as to criminal contempt only and overrule the remainder of assignments of error II, III, and IV as to civil contempt.  Appellant's first assignment of error is sustained.  The judgment entries of the Delaware County Common Pleas Court, Domestic Relations Division, are affirmed in part and reversed and remanded in part.

By Gwin, J., and

Wise, J., concur;

Hoffman, P.J., concurs in part;

dissents in part

*Hoffman, P.J. concurring in part and dissenting in part*

{¶73} I concur in the majority's analysis and disposition of Appellant's assignments of error numbers II, III, IV, V, VI, VIII and IX.

**{¶74}** I further concur in the majority's general analysis and disposition of Appellant's assignment of error number VII. I write separately as to that assignment of error only to note I do not believe all evidentiary rulings by a trial court are subject to an abuse of discretion standard of review.[1]

**{¶75}** Finally, while I concur in the majority's decision to sustain Appellant's first assignment of error, I disagree with its reason for doing so and dissent from its decision not to sustain the assignment of error on its merits.

**{¶76}** While I do not disagree with the majority's due process analysis, Appellant did not raise said claim in her brief to this Court. Appellant presented her argument strictly as error as a matter of law. I would sustain this assignment as a matter of law based upon the clear language of R.C. 3109.05(D). Accordingly, I would reverse outright the trial court's order terminating child support.

---

[1] For a fuller analysis, see my concurring opinion in *State v. Baughman*, 5th Dist. Fairfield App. No. 13-CA-49, 2014-Ohio-1821.

[Cite as *Geary v. Geary*, 2015-Ohio-259.]