[Cite as *Ricksecker v. Ricksecker*, 2022-Ohio-3564.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BETHANY M. RICKSECKER | : | JUDGES: |
| | : | Hon. Earle E. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JOHN G. RICKSECKER | : | Case No. 22-COA-004 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Ashland County
                              Court of Common Pleas, Domestic
                              Relations Division, Case No. 14-DIV-
                              071


JUDGMENT:                     Affirmed


DATE OF JUDGMENT:             October 4, 2022


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

THOMAS T. MULLEN                          L. RAY JONES
Thomas T. Mullen Co., LLC                 215 W. Washington Street
3500 West Market Street, Suite 4          Medina, Ohio 44256
Fairlawn, Ohio 44333

*Baldwin, J.*

{¶1}   Defendant-appellant John Ricksecker appeals from the January 11, 2022 Judgment Entry of the Ashland County Court of Common Pleas, Domestic Relations Division.

STATEMENT OF THE FACTS AND CASE

{¶2}   The parties in this case are the parents of two minor children namely, M.R. (DOB 7/23/13) and L.R. (DOB 4/8/12). The parties received a divorce pursuant to a Divorce Degree filed on November 11, 2015. Initially, parental rights and responsibilities of the two children were governed by a November 11, 2015 shared parenting decree and shared parenting plan.  The shared parenting plan remained in effect until an agreed December 19, 2017 Judgment Entry modified parental rights and responsibilities. Such Judgment Entry designated appellee as the legal custodian of the children and established parenting time for appellant.

{¶3}   On February 4, 2022, appellee filed two motions for contempt against appellant.   Appellee alleged that appellant was in contempt for failing to return the children to her after his parenting time; failing to allow her to have telephone contact with the children during appellant's extended four week summertime visitation; and failing to timely return the children to her following the summertime visitation.  A hearing on the motions was held on March 25, 2021.

{¶4}   The Magistrate, in a Decision filed on September 30, 2021, recommended that appellant be found in contempt of court for not timely returning the children to appellee at the conclusion of the summer parenting time that was scheduled to end on June 30, 2019, not providing a list or itinerary to appellee prior to the 2019 summer

vacation parenting time, preventing the one-parent per week telephone call from appellee to the children during his 2019 summer vacation parenting time, and failing to timely return the children at the conclusion of his weekend parenting time that started on July 18, 2019. Appellant filed objections to the Decision. The trial court, pursuant to a Judgment Entry filed on January 11, 2022, overruled the objections and approved and adopted the Magistrate's Decision.

{¶5}   Appellant now appeals, raising the following assignments of error on appeal:

{¶6}   "I.   DEFENDANT, JOHN RICKSECKER IS NOT IN CONTEMPT OF COURT FOR VIOLATING THE LAW OF THE CASE I.E. PRIOR ORDERS OF THE COURT BY: 1) NOT TIMELY RETURNING THE CHILDREN TO PLAINTIFF BETHANY THOMSON AT THE CONCLUSION OF HIS SUMMER PARENTING TIME THAT WAS SCHEDULED TO END ON JUNE 30, 2019, APPELLEE TO PICK UP CHILDREN; (2) NOT PROVIDING A LIST OR ITINERARY TO PLAINTIFF BETHANY THOMSON PRIOR TO THE 2019 SUMMER VACATION PARENTING TIME WHEN NOT REQUIRED BY LAW OF CASE; (3) PREVENTING THE ONE-PARENT PER WEEK TELEPHONE CALL FROM PLAINTIFF BETHANY THOMSON TO THE CHILDREN DURING HIS 2019 SUMMER VACATION PARENTING TIME WHEN NO CLEAR AND CONVINCING EVIDENCE OF APPELLANT PREVENTED APPELLEE'S CALL, IF ANY, EXIST; AND (4) FAILING TO TIMELY RETURN THE CHILDREN AT THE CONCLUSION OF HIS WEEKEND PARENTING TIME THAT STARTED ON JULY 18, 2019, WHEN APPELLEE IS TO PICK UP NOT APPELLANT RETURNING.

THE TRIAL COURT BY NOT APPLYING THE LAWS OF THE CASE, I.E. LOCAL RULE 20 AND ORDER OF OCTOBER 15TH, 2019, EX E, ADOPTING MAGISTRATE'S DECISION, EXT D, ABUSED ITS' ( SIC) DISCRETION BY FINDING APPELLANT IN CONTEMPT (1) NO LIST OR ITINERARY PRIOR TO THE 2019 VACATION TIME IS REQUIRED; (2) APPELLANT DID NOT PREVENT APPELLEE FROM CONTACTING THEIR CHILDREN; (3) APPELLANT DID NOT PREVENT APPELLEE FROM CONTACTING THEIR CHILDREN; (4) APPELLEE TO PICK UP CHILDREN AFTER 7/18/19 VISITATION."

I

**{¶7}** Appellant, in his sole assignment of error, argues that the trial court erred in finding him in contempt. We disagree.

**{¶8}** We review a contempt finding under an abuse of discretion standard. *Wadian v. Wadian*, 5th Dist. Stark No. 2007CA00125, 2008-Ohio-5009. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶9}** In a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party violated an order of the court. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 416 N.E.2d 610 (1980). "Clear and convincing evidence" is evidence that will form a firm belief in the mind of the trier of fact as to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale*, 58 Ohio St.3d 121, 568 N.E.2d 1222 (1991). Determination of clear and convincing evidence is within the discretion of the trier of fact. *Id.* The trial court's decision should not be disturbed

as against the manifest weight of the evidence if the decision is supported by some competent and credible evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. *Geary v. Geary*, 5th Dist. Delaware No. 14CAF050033, 2015-Ohio-259.

{¶10} Appellant was found in contempt for failing to provide appellee with an itinerary concerning where the children were going to be for the 28 day vacation.  At the March 25, 2021 hearing,  appellee testified that pursuant to  the parties' agreement,[1] time either parent took the children out of the county overnight,  that parent was supposed to provide the other parent with "a location, where they are staying, a contact number, and kind of like an itinerary for any kind of trip…" Transcript of March 25, 2021 hearing at 11. It was also ordered that there was a phone call a week from the children. Appellee testified that appellant picked up the children on June 2, 2019 and that he was to return them on or about June 30, 2019. She testified that appellant never provided her with an address of where the children would be and did not provide her with an itinerary.  She further testified that she did not speak with the children until 28 days after he picked them up which was after he was supposed to return them.

{¶11}  Appellee testified that she sent a message to appellant on June 15, 2019 through Our  Family Wizard and at that point, she had not had any phone calls from the children, did not know where they were, and was concerned about them. She sent another

---

[1] We note that the court's Standard Parenting Time Order states, in relevant part, as follows: "If either parent takes the child outside the county in which that parent resides, for a period of 24 hours or more, that parent must provide the other parent with the destination, times of arrival and departure, method of travel, and  telephone number where the child can be reached in case of emergency.

message to appellant on June 21, 2019 that was viewed by him on July 21, 2019 and did not hear from him. She testified that for 19 days, she had no calls from her children and did not know where they were. The following is an excerpt from her testimony:

{¶12} Q. I want to call your attention to what we have marked as Exhibit 4, do you have that in front of you?

{¶13} A. Just one moment please, yes.

{¶14} Q. Can you identify Exhibit 4 for the Court?

{¶15} A. It's a message to Mr. Ricksecker sent on June 21, 2019 where he viewed it on July 21st at 10:34 a.m. and I am reaching out because it was 19 days without no contact and with no itinerary still, and I had no idea where the children were, and I did not hear from him.

{¶16} Q. Did you get a response from Mr. Ricksecker to your 6-11-2019 inquiry?

{¶17} A. I did not, and as seen in this exhibit, I did attempt to call and I was able to leave a voicemail at that time, 7:00 p.m. there was room in the voicebox but no call was returned.

{¶18} Q. So you still had no contact, no calls from your children?

{¶19} A. Yes, for 19 days.

{¶20} Q. And you did not know where they were?

{¶21} A. Had no idea where they were, correct.

{¶22} Q. And turning to Exhibit 5 before the Court, could you identify Exhibit 5, please?

{¶23} A. Yes, this message was sent through Our Family Wizard, again to Mr. Ricksecker on June 26, 2019, where he again viewed it on July 21, 2019 at 10:34 a.m.

and this was sent because it was 24 days with no contact, and his voicemail was again full, and the phone now at this point was off because it wasn't ringing, it was going straight to voicemail, and I did again select the option to send SMS texts to send to my phone number, but I can not confirm if he received it or not.

{¶24} Q.  Did you get any type of a response or reply by telephone or through Family Wizard with respect to the efforts that you made on 6-26?

{¶25} A.  I did not.

{¶26} Q.  So you are now how many days at all without knowing where your children are?

{¶27} A.  24.

{¶28} Q.  Turning your attention now to Exhibit 6, do you have that before you?

{¶29} A.  Yes, I do.

{¶30} Q.  Can you identify Exhibit 6?

{¶31} A.  So this was sent on June 30th, 2019 to Mr. Ricksecker where he viewed it on July 21, 2019 at 10:35 a.m., and I was sending this message because the kids were supposed to be home this day at 7 p.m., and they did not return.  So when they did not arrive, I did call his phone and the children answered, it was the first contact that I had with them in 28 days, and [M.J.] was very tearful and wanted - -…

{¶32} Q.  So I believe that your testimony was that the kids were due home that day and you had not talked with them in 28 days, is that correct?

{¶33} A.  That is correct.

{¶34} Q.  And did you have any conversation with Mr. Ricksecker on June 30th, 2019?

**{¶35}** A. I cannot recall exactly what was said, but I did ask if I could pick them up or when they were going to come home, and he would not give me a clear date, so that was the purpose of this message, to try and get a date. I offered to come any time. I notified my work so that I could leave at any time to go get my children, because they were aware of the circumstances, but I was not provided with a date or time when I could pick them up.

**{¶36}** Q. So as of June 30, 2019, you had no clear understanding when Mr. Ricksecker was going to bring your children home is that correct?

**{¶37}** A. Yes.

**{¶38}** Q. And just so I am clear, that was the date that they were due home, is that correct?

**{¶39}** A. Yes, at 7 p.m.

**{¶40}** Transcript at 16- 18. Appellee testified that as of June 30, 2019, she had no clear understanding as to when appellant was going to bring the children home. The children were not returned home until after July 2, 2019 when appellee was able to secure an interim court order for their return.

**{¶41}** Appellee also testified that on May 31, 2019, she sent a message to appellant which he viewed on June 1, 2019. She also sent a message to him on July 26, 2019 that was not viewed by him until August 8, 2019 asking when she could get the children. The children were due home on June 30, 2019 and as of July 26, 2019, were still not home. The children came home on August 1, 2019. Appellee testified that they were returned on July 2, 2019, but went with appellant for a weekend visitation on July 18, 2019 and that he again kept them for an extended period of time. According to

appellee, appellant did not provide any explanation as to why he did not return the children and did not send her any e-mails or response as to why he wasn't returning the children.

{¶42} Appellee further testified that she sent a message to appellant on July 31, 2019 that was viewed by appellant the next day. In the message, she stated that she had had no contact with the children for ten days. Appellee asked appellant to let the children call her. Appellee testified that she had attempted to call appellant a number of times to determine where the children were and to speak with them, but that she sometimes was unable to leave a voice mail message because appellant's voice mail box was full.

{¶43} Appellant testified at the hearing that there was no set itinerary when he went on trips with the children in the summer and that they went to Utah. He testified that they went to various national parks. He testified that he provided appellee with a list of national parks that they were going to go to prior to the vacation. He further testified that his children spoke with appellee three times during the vacation that they took in 2019 and that they called "when we had a signal." Transcript at 78. Appellant was unable to recall the exact dates and had no documentation reflecting contacts between his number and appellee's phone number. The following is an excerpt from his testimony:

{¶44} Q. Is there some reason why did you not provide that relevant piece of information to your attorney for today's hearing?

{¶45} A. I, I, I don't know.

{¶46} Q. You don't know why you did not do it?

{¶47} A. No, I don't know.

{¶48} Q. Do you understand that one of the allegations in this proceeding that there was no contact, do you understand that?

**{¶49}** A. Yes, I understand that.

**{¶50}** Q. Would that be relevant and important piece of information to support your case?

**{¶51}** A. I suppose it would.

**{¶52}** Q. Yes, I suppose it would. You heard the testimony with respect to the 17 Exhibits that we presented to the Court, is that a true statement?

**{¶53}** A. I heard it, yes.

**{¶54}** Transcript at 79-80. According to appellant, they did not have internet out in the mountains and had very limited cell service.

**{¶55}** Appellant also testified that he attempted to return the children to appellee on June 30, 2019, but that no one was at appellee's house.

**{¶56}** The Magistrate, in the case sub judice, stated, in relevant part, as follows:

**{¶57}** "The magistrate has weighed the credibility of the witnesses. The undersigned magistrate conducted all of the hearings from that date of the final hearing of the parties' divorce through the hearings of all of the numerous post decree motions. The magistrate is very familiar with the parties.

**{¶58}** "The magistrate finds that Bethany's testimony and evidence is much more credible than John's testimony and evidence. The magistrate finds that John was very vague in his testimony and his testimony totally lacked credibility especially in light of the constant litigation between the parties, and that the issues presented in these Motions have been known to the parties for months."

**{¶59}** As noted by the trial court, the weight to be given to the evidence and credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d

182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). As noted by the Magistrate, appellee's claims were supported not only by her testimony, but by numerous admitted Exhibits showing Our Family Wizard communications sent by her to appellant. In turn, appellee's testimony was vague and not, for the most part, credible.

**{¶60}** In short, viewing the transcript in its entirety, we find that the trial court did not abuse its discretion in finding appellant in contempt based on appellee's testimony and the Exhibits. We do not find the trial court's decision to be arbitrary, unreasonable, or unconscionable.

**{¶61}** Appellant's sole assignment of error is, therefore, overruled.

**{¶62}** Accordingly, the judgment of the Ashland County Court of Common Pleas. Domestic Relations Division is affirmed.

By: Baldwin, J.

Wise, Earle, P.J. and

Wise, John, J. concur.